ALLEN, William H., Appellant,

v.

BOWEN, Otis, R., Secretary of Health and Human Services.

No. 89–1085.

United States Court of Appeals, Third Circuit.

Argued June 8, 1989.

Decided July 25, 1989.

James M. Lafferty (argued), Community Legal Services, Inc., Philadelphia, Pa., for appellant.

Michael M. Baylson, U.S. Atty., Richard Mentzinger, Jr., Asst. U.S. Atty., E.D.Pa., Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Chief, Social Sec., Litigation Div., Victor J. Pane (argued), Asst. Regional Counsel, Office of General Counsel, Dept. of Health and Human Services, Philadelphia, Pa., for appellee.

Before BECKER, STAPLETON and GARTH, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

This case involves the review of a denial of Supplemental Security Income ("SSI") benefits by the Secretary of Health and Human Services ("Secretary"). The Secretary determined that the claimant was able to perform light work and had transferable skills, and that accordingly, pursuant to the applicable regulations, he was not disabled. The district court found that the claimant was able only to perform sedentary work but because of his transferable skills, was not disabled. We agree that the Secretary erred in finding the claimant able to perform light work, but additionally conclude that the Secretary failed to establish that the claimant possessed transferable skills. Accordingly, we will reverse the Secretary's determination and direct that benefits be provided.

### I.

William H. Allen, the appellant in this case, is a fifty year old man with a tenth grade education. He worked for approximately eighteen years as a meat cutter and foreman at a meat company. Allen applied for disability benefits in December 1986, alleging that he was unable to engage in any substantial gainful activity because of a combination of several impairments, including abdominal injuries from a gunshot wound and a stab wound, poor vision, a heart condition and a breathing problem, which have resulted in extended hospital care since 1985. Specifically, from July 1985 to November 1987, Allen underwent the following hospitalizations: surgery for repair of a mandible fracture at Misericordia Hospital (July, 1985); treatment for alcoholism at Eagleville Hospital (November—December, 1985); treatment for repair of a stab wound in the abdomen at Misericordia Hospital (February, 1986); surgery for bowel obstruction and adhesions at the Giuffre Medical Center (April, 1986); follow-up surgeries for multiple bowel adhesions at the Giuffre Medical Center (April—July, 1986); surgery for cataracts at the Wills Eye Hospital (February, 1987); and surgery for hernia repair at the Giuffre Medical Center (July, 1987).

Allen's claim was denied initially and on reconsideration by the Social Security Administration. Allen subsequently requested and obtained a hearing on the issue of his disability, which was held on November 17, 1987 before an Administrative Law Judge ("ALJ"). Allen submitted for consideration medical reports from his treating

physician indicating, *inter alia*, that as a result of his multiple surgeries in his abdomen, he was not to perform any heavy lifting.[1] Another medical report, compiled at the request of the Pennsylvania Bureau of Disability Determination, confirmed the history of multiple surgeries to the abdomen; indeed, the consulting physician noted that "the patient's abdomen looked like a roadmap. There were multiple scars in all areas." Tr. at 152.

At the hearing, Allen testified that he had been told not to lift anything over ten pounds. He reported that walking five or six blocks brought on dizziness and shortness of breath and that sometimes he experienced headaches and loss of balance. He further testified that he continued to experience pain from his hernias. A vocational expert nonetheless testified that considering Allen's prior job experience and his physical limitations, there were jobs available in the national economy that he could perform.

On December 21, 1987, the ALJ found that, although Allen had established that he could no longer perform his past employment as a meat cutter, he nevertheless had the residual functional capacity to perform the full range of "light work" as specified in 20 C.F.R. § 416.967(b). The ALJ further found Allen to possess transferable skills and to be a "younger person." Accordingly, pursuant to Rule 202.-19 of 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 2, which directs that an individual who has the residual functional capacity for light work, is a younger person, has a limited education with transferable work skills is "not disabled," the ALJ denied benefits. The ALJ's decision became final on July 14, 1988 after the Appeals Council denied Allen's request for review. This action seeking judicial review of the Secretary's decision followed. 42 U.S.C. § 405(g).

The parties filed cross-motions for summary judgment in the district court, and the Secretary's motion was granted. The court found the ALJ's conclusion that Allen was not disabled to be supported by substantial evidence. The court further found, however, that the ALJ committed two errors in arriving at its conclusion. First, the court determined that Allen is not a "younger person," defined in 20 C.F.R. § 416.963(b) to be a person under the age of fifty, as so found by the ALJ. Since Allen was born on November 12, 1937, the district court reasoned that at the time of the hearing on November 17, 1987, Allen was fifty years old and, accordingly, was a "person approaching advanced age." 20 C.F.R. § 416.963(c).[2] Second, the court determined that the ALJ's finding that Allen could perform "light work" was not supported in the record; rather, according to the treating physician's reports, he was able only to undertake "sedentary work." The district court concluded, however, that both these errors were harmless because under the applicable regulations an individual who has the residual functional capacity for sedentary work, is approaching advanced age, and has a limited education with transferable work skills is "not disabled." Rule 201.11 of 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. Allen appeals.

■ Our standard of review, as was the district court's, is whether the Secretary's decision is supported by substantial evidence in the record. *See, e.g., Woody v. Secretary of Health and Human Services,* 859 F.2d 1156, 1159 (3d Cir.1988).

## II.

■ An entitlement to SSI disability benefits is established when a medically determinable impairment of such severity as to

---

1. In addition to the recent surgeries to his abdomen, the medical evidence indicates that in August, 1974 Allen was treated at Misericordia Hospital for a gunshot wound to the left chest which penetrated the abdomen; the treatment included an "exploratory laparotomy." Tr. at 163. Three months later another operation in the abdominal area was performed which suc-

cessfully abated apparent complications from the initial injury and treatment.

2. The Secretary does not challenge in this appeal the conclusion that Allen is a "person approaching advanced age" as so found by the district court.

prevent an individual from engaging in any kind of "substantial gainful work which exists in the national economy," for a minimum statutory twelve-month period, is demonstrated. 42 U.S.C. § 423(d)(2)(A). In proving such a disability, the claimant is required to show that he is unable to return to his former job because of physical or mental impairments. *See Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct 1952, 76 L.Ed.2d 66 (1983); *Kangas v. Bowen*, 823 F.2d 775 (3d Cir.1987). Once a claimant has proved that he is unable to perform his former job, however, the burden shifts to the Secretary to prove that there is some other kind of substantial gainful employment that the individual is able to perform. *Kangas*, 823 F.2d at 777; *Chicager v. Califano*, 574 F.2d 161 (3d Cir.1978). The Secretary is to consider such factors as the claimant's physical ability, age, education and work experience. 42 U.S.C. 423(d)(2)(A); 20 C.F.R. § 404.1520(f).

■ In this case the Secretary does not contest the ALJ's finding that Allen carried his initial burden under the regulations of proving that he no longer could engage in his past relevant occupation as a foreman at a meat company because of the heavy exertional demands of that job. Allen testified that it was necessary for him to lift weights ranging from 45 to 120 pounds, and the vocational expert confirmed that Allen's former job would be classified as "heavy" work.

Rather, the issues in this case involve whether the Secretary met his burden of

proving that the claimant could nevertheless perform some other job in the national economy.[3] More specifically, Allen challenges the sufficiency of the evidence on two critical findings made by the ALJ, first, that he could perform "light work," and second that he possessed transferable skills.[4] In response, the Secretary suggests that there is ample evidence in the record to support the ALJ's findings on these two issues. Alternatively, the Secretary argues that even if we should find that the Secretary failed to carry his burden, the appropriate relief is a remand to the agency for further development of the record. We agree with Allen that the Secretary's findings in these two respects are not supported by substantial evidence and moreover conclude, in light of the Secretary's failure to adduce sufficient proof, that remand to the agency is not appropriate. We find that a direction for an award of benefits is in order.

### a. *Residual Work Capacity.*

Allen's treating physician, Dr. Giuffre, in a letter summarizing Allen's medical history, explained that "because of his multiple surgeries and poor tissue and because of the mesh graft holding his incision [for treatment of his hernia] together, he has been advised to permanently not do any heavy lifting of any kind." App. at 112. Dr. Giuffre further noted that, although Allen "will be partially physically incapacitated for the rest of his life," App. at 113, his prognosis is "excellent except for the

---

**3.** In this appeal the Secretary also raises for the first time a threshold argument against Allen's claim of disability. The Secretary asserts that the statutory requirement that an impairment "be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), has not been met because Allen relies on "a series of unrelated impairments which happened to occur in sequence." Brief at 7. We believe that the Secretary mischaracterizes Allen's position. Allen argues that as a result of his multiple abdominal surgeries, he was left with physical impairments that rendered him permanently disabled, not that a period of disability he suffered for each of his impairments should be added together to meet the durational requirement. The ALJ recognized this as the correct analytical approach,

but concluded that the impairments were not disabling. As discussed *infra*, the medical evidence supports Allen's claim that the physical impairments resulting from his multiple abdominal surgeries rendered him permanently disabled, and accordingly, we find the Secretary's contrary position to be without merit.

**4.** In this appeal, Allen also raises the issue, decided against him in the district court below, that the ALJ improperly failed to consider the effect of his multiple hospitalizations on his ability to work on a sustained basis. Because we decide that the Secretary's finding of an absence of disability is not supported by substantial evidence, we do not reach and intimate no view on this issue.

previously mentioned physical limitations." App. at 112. The parties in this case agree that a treating physician's report must be accorded great weight, especially when their opinion "reflects expert judgment based upon continuing observation of the patient's condition over a prolonged period of time." *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987), *quoting, Podedworny v. Harris*, 745 F.2d 210, 217–218 (3d Cir.1984). The disagreement here is over the interpretation of Dr. Giuffre's conclusions, specifically, the "no heavy work" limitation.

■ The weight an individual can lift is one of the factors that determines residual work capacity. "Light work" is defined in the regulations as work which involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 416.967(b). In contrast, sedentary work is defined as involving the lifting of no more than ten pounds at a time and occasionally the lifting or carrying of articles like docket files, ledgers and small tools. 20 C.F.R. § 416.967(a).

■ We agree with the district court that the medical evidence in this case supports Allen's position that he could perform only sedentary work. Allen testified that he was told by Dr. Giuffre not to lift anything over ten pounds. This testimony is expressly corroborated by the medical report written by Dr. Giuffre on July 30, 1987 just after Allen's hernia operation. In that report, Dr. Giuffre specifically noted that Allen was to lift "not more than 10 lbs" and additionally cautioned that he was to perform "[*n* ]o strenuous activity." Tr. at 214 (emphasis in original). The ALJ cited no specific medical evidence controverting or even explaining Dr. Giuffre's express ten pound restriction. We have repeatedly cautioned that ALJs may not ignore consistent medical evidence showing disability in favor of their own opinion that there is no disabling impairment. *See, e.g., Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987). Accordingly, we find that the ALJ's decision that Allen could perform light work is not supported by substantial evidence.

In this appeal, the Secretary relies on the general language in Dr. Giuffre's summary report, describing Allen's prognosis as "excellent" and only restricting his activity to "no heavy lifting." App. at 112–113. According to the Secretary, Dr. Giuffre's post-operative report indicating a ten pound limitation is appropriately interpreted as being of a temporary nature, relating to Allen's recovery from his hernia surgery, and never intended as a permanent restriction on his activity; if it were otherwise, the Secretary reasons, Dr. Giuffre would have explicitly repeated the weight restriction in her subsequent summary report. In addition, the Secretary relies on the fact that the consulting physician who examined Allen, like Dr. Giuffre, did not opine that Allen was limited to sedentary work. We are unpersuaded.

We see no reason to interpret Dr. Giuffre's reports in the narrow manner suggested by the Secretary. Indeed, we believe that the more appropriate interpretation of the various reports is that Dr. Giuffre understood a "no heavy lifting" limitation to be a restriction on lifting more than ten pounds as earlier specified. There is no evidence that the restrictions were intended to be temporary and Dr. Giuffre's summary report reaffirmed that Allen's "excellent prognosis" was subject to the "previously mentioned physical limitations." App. 112–113.

■ The Secretary's reliance on the consulting physician's report is similarly misplaced. We have reaffirmed on a number of occasions the principle that where a report of a treating physician conflicts with that of a consulting physician, the ALJ must explain on the record the reasons for rejecting the opinion of the treating physician. *See, e.g., Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir.1986); here the ALJ did not explain its reason for ignoring Dr. Giuffre's weight limitation. More important, however, in this case we perceive no conflict between the medical judgments because the consulting physician's report is absolutely silent on the issue of Allen's physical limitations. We decline to interpret this silence as affirmative evidence

that the Secretary's consulting physician considered Allen to have no weight restrictions. Rather, we believe the proper inference from the report's silence is that the consulting physician simply did not consider the issue. Thus, since the unrebutted medical evidence in this case indicates that Allen could not lift over ten pounds, we find that Allen is able to perform only sedentary work as defined under the applicable regulations.

### b. *Transferability of Skill.*

The ALJ determined that Allen had transferable work skills based on the testimony of the vocational expert who so concluded. Nevertheless, although the vocational expert identified six jobs that Allen could perform, all of these jobs constitute unskilled employment whereas Allen's former job constitutes semi-skilled work. Specifically, the vocational expert testified before the ALJ as follows:

Q: Based on the vocational part of his testimony, will you give me an opinion regarding his past relevant work, exertional level and skills?

A: Since Mr. Allen was employed as a meat cutter and also appears to have some supervisory experience his work could be classified as semi-skilled and it would fall into the heavy duty classification because of the lifting.

Q: Are those skills transferable to other jobs?

A: I believe they are, yes.

Q: ... Based on those factors, are there any jobs that exist in the national economy that he could perform?

A: Yes, there are.

Q: What are they, sir?

A: According to the labor market survey, there are seven particular opportunities that—I'm sorry, six actually, that Mr. Allen should be able to perform and these would be within his transferable skills, security guards, food preparation workers, work and painting assembly, work as a vehicle washer. Do I need to explain how I go about determining transferability of skills?

Q: Yes, for the record, you may indicate that.

A: Okay. Basically, I'm just taking into account his work as a meat cutter and since that would be classified as semi-skilled, it would usually require a specific vocational preparation of two or more months to prepare for that type of work and be able to do it effectively. So he should be able to assume *unskilled* work and these jobs that I just listed would fall into that category of *unskilled* work because they require 30 days or less preparation time.

App. 43–45 (emphasis added).

Allen argues that the Secretary failed to prove that his job skills are transferable, reasoning that since the only work presently suitable for him according to the vocational expert is *unskilled* labor, his skills are plainly *not* transferable. As support for his position, he relies on this court's prior decision in *Podedworny v. Harris,* 745 F.2d 210 (3d Cir.1984). *Podedworny* involved an employee who was previously employed as a crane operator. The vocational expert testified that the claimant's prior job was "skilled work" and concluded that the skills were transferable, but nevertheless identified only three unskilled jobs which the claimant could perform. This court reasoned as follows:

[a]s we noted above, all three of these jobs are unskilled. This fact is critical because the regulations do not permit benefits to be denied based on the transfer of skills to unskilled jobs. *See* Social Security Ruling 82–41 § 2(b) ("Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of *other skilled or semiskilled jobs.*") (emphasis added). Indeed, it is counterintuitive to suggest that skills can be transferred to unskilled work, and we reject any contention that such transfer can occur. We therefore hold that the Secretary erred as a matter of law in concluding that appellant had transferable skills and that she erred by applying

the incorrect grid from the medical-vocational guidelines [note omitted].

*Id.* at 221 (emphasis in original).

The Secretary "concedes that [*Podedworny*] is an obstacle," brief at 13, but suggests that it is distinguishable from the instant case in one important respect. Allen, unlike the claimant in *Podedworny,* had some supervisory responsibilities for approximately ten years at the meat company. The Secretary argues essentially that, although the vocational expert did not focus on Allen's supervisory skills, such expert testimony is not necessary to establish the Secretary's burden because supervising is a "general skill and includes delegating duties, dealing with workers, motivating workers, keeping time records, offering constructive criticism, and completing work schedules." Brief at 14. Again we are unpersuaded.

■ The Secretary's attempt to distinguish *Podedworny* is without substance in light of our reasoning in that case. What we stated there is merely the simple truism that if the only jobs that a claimant can presently perform are of an unskilled nature, then any skills he or she may have obtained in prior employment are not transferable. This is so regardless of nature of the former employment or the number or level of skills previously obtained. The pertinent issue is whether *at present* the claimant can perform jobs in the national economy based on skills he may have obtained from his prior work experience. When the answer to this question is, as it was in this case, that the claimant can perform only unskilled jobs, then plainly his former employment has transferred no skills of present value.

Ultimately, the Secretary recognizes the anomaly inherent in the concept of transferring skills to unskilled jobs. His argument is that "[s]urely, a more comprehensive analysis [than that of the vocational expert] of the skill level of plaintiff's past work as a supervisor would have led to specific skilled or semiskilled work [Allen] could perform at the light exertional level." Secretary's Brief at 15. We cannot assume facts for which there is no supporting evidence in the record, however. *A fortiori,* we cannot assume there are skilled or semi-skilled positions available to the claimant in a case in which the Secretary's vocational expert was specifically asked what jobs were available to the claimant and responded naming only unskilled positions.

### c. *Disposition.*

■ The final issue presented is whether we should remand this case to the Secretary for further development of the record on the issue of transferable job skills, or should direct that benefits be awarded. If we apply the Secretary's Medical–Vocational Guidelines (the "Grids") to the facts in this case, the guidelines direct the conclusion that Allen is disabled. Rule 201.10 of the regulations provides as follows:

TABLE NO. 1.—RESIDUAL FUNCTIONAL CAPACITY: MAXIMUM SUSTAINED WORK CAPABILITY LIMITED TO SEDENTARY WORK AS A RESULT OF SEVERE MEDICALLY DETERMINABLE IMPAIRMENT(S)

| Rule | Age | Education | Previous work experience | Decision |
|------|-----|-----------|--------------------------|----------|
| 201.10 | Closely approaching advanced age | Limited or less | Skilled or semi-skilled—skills not transferable | Disabled |

Rule 201.10 of 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1 (emphasis added).

The Secretary acknowledges that this court has the power when it determines that the ALJ's decision is not supported by substantial evidence to reverse and direct an award of benefits. *See, e.g., Podedworny,* 745 F.2d at 221. The Secretary argues, however, that remand is appropriate here because it can establish that, in light of Allen's supervisory skills, there are jobs that he could perform in the national economy that were not mentioned or explored by the first vocational expert.

The Secretary, in effect, asks this court for a second chance to prove his case because the testimony given by the first vocational expert did not satisfy the *Podedworny* teaching. We see no reason, however, why the Secretary should be afforded such an additional opportunity. This is not a case where, for example, the legal standard was unclear, *see Purter v. Heckler,* 771 F.2d 682, 698 (3d Cir.1985) (remand for additional facts and reassessment of the facts in light of proper legal standard), or the Secretary did not have an opportunity to consider a new policy issued after the administrative hearing took place, *Stokes v. Schweiker,* 729 F.2d 932, 935 (3d Cir.1984). Rather, *Podedworny* was decided in 1984 and thus was plainly the law in this jurisdiction for several years prior to the hearing.

The Secretary was given full opportunity to develop the administrative record in this case. The fact that the expert the Secretary hired either made a mistake or testified in a manner it now regrets does not alter our conclusion. Where as here the claimant established a *prima facia* case of entitlement, the record was fully developed, and there is no good cause for the Secretary's failure to adduce all the relevant evidence in the prior proceeding, we see no reason to remand for further fact finding.

## III.

Based on the foregoing analysis, we reverse the judgment of the district court and direct that benefits be awarded in this case.