Nga X. MAC

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services.

No. 92–3069.

United States District Court, E.D. Pennsylvania.

Jan. 8, 1993.

Thomas D. Sutton, Community Legal Services, Inc., Philadelphia, PA, for plaintiff.

Dorothea J. Lundelius, Sp. Asst. U.S. Atty., Health & Human Services, Region III, Philadelphia, PA, for defendant.

## MEMORANDUM

GILES, District Judge.

Plaintiff Nga X. Mac brought this action pursuant to 42 U.S.C. §§ 1383(c)(3) & 405(g) for review of the final decision of the Secretary of Health and Human Services ("the Secretary") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*

## I. PROCEDURAL BACKGROUND

Mac first applied for SSI benefits in July, 1990. Record ("R.") at 53–56. Her application was denied. R. 57–59. She filed a request for reconsideration in September 1990, which was also denied. R. 60–64. Mac then filed a request for a *de novo* hearing before an Administrative Law Judge ("ALJ"). R. 65. The hearing was held on February 22, 1991. Mac attended the hearing, where she testified with the assistance of an interpreter and was represented by counsel. R. 23–49.

In a written decision ("Decision") the ALJ found that Mac suffers from severe degenerative joint disease of the left knee, mild hypertension, the residuals of gynecological surgery, and a hearing loss in the left ear. R. 14, Decision at 4, Finding 2. However, the ALJ found that these impairments are not of sufficient severity to meet or equal the severities of any relevant impairments described in Appendix 1 to Subpart P of Regulations No. 4 of the Social Security Administration. R.14, Decision at 4, Finding 3. He concluded that Mac retains the residual functional capacity for sedentary work. R. 14, Decision at 4, Finding 5. The ALJ further found that Mac is a younger individual, that she is unable to communicate in English, and that she has no past relevant work experience. R. 14–15, Decision at 4–5, Findings 6–8. Based upon these findings of age, education, past relevant work experience, and residual functional capacity, the ALJ applied Rule 201.23 of Table No. 1 of Appendix 2 to Subpart P of regulations No. 4 of the Social Security Administration, which required a finding that Mac is not disabled. R. 15, Decision at 5, Finding 9.

Mac's request for review of the ALJ's decision was denied by the Social Security Administration Appeals Council on March 23, 1992, R. 3–4, making the denial of benefits a final decision of the Secretary. Plaintiff now appeals that decision pursuant to 42 U.S.C. §§ 1383(c)(3) & 405(g).

## II. DISCUSSION

■ Hearings before an ALJ to decide SSI disability claims involve shifting burdens of proof.

A claimant satisfies her initial burden of proof by showing that she is unable to return to her customary occupation.... Once she has made such a demonstration, the burden of proof shifts to the Secretary to show that the claimant, given her age, education and work experience, has the capacity to perform specific jobs in the national economy.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983) (citations omitted). The ALJ found that plaintiff had no past relevant work experience, R. 15, Decision at 15, Finding 8. Plaintiff thus satisfied her burden. The burden then shifted to the Secretary to show that plaintiff can perform jobs which exist in substantial numbers in the national economy. The Secretary's burden is to be strictly construed. *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir.1979).

Certain impairments have been determined by the Secretary to be so severe that anyone suffering from them is disabled, irrespective of any other vocational factors such as her age, education, and previous work experience. These impairments are listed in the Secretary's regulations at 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 (the "Medical Listings"). The ALJ found that Mac suffers from severe degenerative joint disease of the left knee, mild hypertension, the residuals of gynecological surgery, and a hearing loss in the left ear. R. 14, Decision at 4, Finding 2. However, the ALJ found that these impairments are not of sufficient severity to meet or equal the severities of any relevant impairments described in the Medical Listings. R.14, Decision at 4, Finding 3. Therefore, the ALJ concluded that medical evidence alone did not compel a finding of disabled.

■ When a claimant's medical condition alone does not compel a finding that she is disabled, the Secretary must consider whether the claimant is disabled by her medical condition in conjunction with other vocational factors. In some circumstances the Secretary's burden to show that plaintiff can perform specific jobs in the national economy may be met through reliance on the Medical–Vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, (the "grids"). The Medical–Vocational grids "contain all possible combinations of the four relevant vocational factors—age, education, work experience, and residual functional capacity. With respect to each combination, the guidelines reveal whether an individual described by those particular characteristics is 'disabled' or 'not disabled'—that is, able or not able to engage in any other significant, gainful employment that exists in the national economy." *Santise v. Schweiker*, 676 F.2d 925, 927–28 (3d Cir.1982).

The ALJ found that plaintiff retains the residual functional capacity for sedentary work. R. 14, Decision at 4, Finding 5. In other words, she is capable of meeting the strength demands of jobs which the Department of Labor has classified as sedentary.[1] Because plaintiff is limited to sedentary work, the ALJ applied the "grid" regulations of 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, which are predicated upon a residual functional capacity to perform sedentary work. Rule 201.23 of this Table commands that a person of claimant's age,[2]

---

1. "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a).

2. Plaintiff was born on April 14, 1949. R. 27, 53.

education,[3] and previous work experience[4] who is limited to sedentary work is not disabled.

The gravamen of plaintiff's appeal is that it was improper for the ALJ to apply the Medical–Vocational grids to find her not disabled. She argues that she suffers from urinary incontinence, and that incontinence is an impairment which is not taken into account by the grids. As a result, she argues, the Secretary's reliance on the grids for a determination that she is not disabled was error.

■ For the reasons stated below, we agree with plaintiff that it is error to rely upon the grids to determine that a claimant who suffers from incontinence is not disabled. The grids are predicated upon the assumption that the claimant suffers only "exertional" impairments. When a claimant suffers from urinary incontinence, a "nonexertional impairment," evidence in addition to the grids must be used to determine if she is disabled. We also find that the only conclusion supported by substantial evidence is that plaintiff suffers from incontinence. Therefore, it was error for the ALJ to use the grids to determine that she is not disabled.

### A. Exertional and Nonexertional Impairments

■ The Secretary's regulations recognize two different types of impairments which may establish disability, either alone or in combination. *Exertional* limitations or impairments are those that affect a claimant's ability to meet the strength demands of jobs. The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertional levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling. Limitations or restrictions which affect a claimant's ability

to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are classified as *nonexertional.* 20 C.F.R. § 404.1569a.

■ The ALJ arrived at the conclusion that plaintiff is not disabled by applying the Medical–Vocational grids. However, the grid rules "are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs," i.e. an exertional impairment. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2). Therefore, the rules "may not be fully applicable" when a claimant has nonexertional impairments. *Id.; Green v. Schweiker,* 749 F.2d 1066, 1072 (3d Cir.1984); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1155 (3d Cir. 1983); *Burnam v. Schweiker,* 682 F.2d 456, 457–58 (3d Cir.1982); *Santise,* 676 F.2d at 934–35.

■ If a claimant has nonexertional as well as exertional impairments, the grids are not to be applied unless they direct a conclusion that the claimant is disabled. If the grids do not direct a finding of disabled, "full consideration must be given to all of the relevant factors in the case." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.-00(e)(2); *Burnam,* 682 F.2d at 458. In such a situation, the grids are to serve only as a "framework" to guide the Secretary's decision. 20 C.F.R. § 404.1569a(d); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.-00(e)(2). The Secretary may not rely solely on the grids, but must call a vocational expert to show that the claimant can perform substantial gainful activity even though she suffers from the nonexertional impairment. *Gilliland v. Heckler,* 786 F.2d 178, 183–84 (3d Cir.1986); *Santise,* 676 F.2d at 934–35; *Burton v. Bowen,* 704 F.Supp. 599, 604–05 (E.D.Pa.1989); *Johnson v. Bowen,* 699 F.Supp. 475, 482 (E.D.Pa.1988); *Atkins v. Bowen,* 690 F.Supp. 383, 389–90 (E.D.Pa.1988); *Single-*

---

**3.** Plaintiff attended school through fourth grade in Vietnam. R. 71. She testified that she is unable to read or write in English. R. 28. The ALJ found that she is unable to communicate in English. R. 15, Decision at 5, Finding 7.

**4.** Plaintiff has no past relevant work experience. R. 15, Decision at 5, Finding 8.

*ton v. Schweiker,* 551 F.Supp. 715, 723–24 (E.D.Pa.1982). Therefore, if plaintiff suffers from a nonexertional impairment, the ALJ's reliance on the grids was improper.

### B. Urinary Incontinence Is A Nonexertional Impairment

Plaintiff claims, and defendant does not dispute, that urinary incontinence is a nonexertional impairment for the purposes of SSI benefits determinations. Although there appears to be no dispositive case law in this circuit, courts in other jurisdictions have uniformly held that urinary incontinence is a nonexertional impairment. *See, e.g., Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir.1986); *Nichols v. Califano,* 556 F.2d 931 (9th Cir.1977); *Torres v. Secretary of HHS,* 791 F.Supp. 342, 344 (D.P.R. 1992); *Pascariello v. Heckler,* 621 F.Supp. 1032 (S.D.N.Y.1985); *Castellanos v. Bowen,* 1986 WL 12007 at *14 (N.D.Ill.1986).

 This court agrees that incontinence is a nonexertional impairment, the presence of which precludes the use of the grids to find that a claimant is not disabled. A grid finding of not disabled follows from determination by the Secretary that a significant number of jobs exist in the national economy for people of the claimant's residual functional capacity, age, education, and previous work experience. *Santise,* 676 F.2d at 928. But it is clear that necessity to leave the work station regularly due to incontinence could significantly affect a claimant's ability to meet job demands, even for a claimant of unimpaired physical strength, and thus reduce the number of jobs available to that claimant. *See Pascariello,* 621 F.Supp. at 1034. Therefore, the grids could significantly overestimate the number of jobs available in the national economy to claimants who suffer from in-

continence, and reliance upon them would not meet the Secretary's burden.

### C. Plaintiff Suffers From Urinary Incontinence

The considerations above show that if plaintiff is suffering from urinary incontinence, a nonexertional impairment, the ALJ's reliance on the Medical–Vocational grids was error. The resolution of this appeal thus turns on the factual question of whether or not plaintiff does suffer from incontinence.

 The Secretary's finding of fact is conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *Dobrowolsky,* 606 F.2d at 406. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427. Evidence is not substantial "if it is overwhelmed by other evidence." *Kent,* 710 F.2d at 114.

We first note that the ALJ did not make a specific finding of fact regarding plaintiff's incontinence, despite the fact that the propriety of applying the grids rests upon such a finding. Thus, it is not immediately clear from the ALJ's findings if his reliance upon the grids was based upon a mistake of law, the assumption that the grids may be used irrespective of whether plaintiff suffers from incontinence, or if it was based upon an implicit finding that the plaintiff does not suffer from incontinence.[5]

 It was error for the ALJ to omit a specific finding regarding incontinence.

---

**5.** The ALJ found that Mac "suffers from ... the residuals of gynecological surgery." R. 14, Decision at 4, Finding 2. Plaintiff testified that she has suffered from incontinence ever since her gynecological surgery, R. 34, i.e. incontinence is one of the "residuals" of that surgery. Thus, the ALJ seems to have credited plaintiff's complaint to some extent. However, the ALJ also found that Mac's "testimony with respect to the severity of her symptoms and the limitations which

her impairments impose cannot be totally credited," R. 14, Decision at 4, Finding 4, and in the body of his opinion, he wrote that he "has significant reservations with respect to the credibility of the claimant's assertions with respect to her incontinence." R. 14, Decision at 4. Thus, it seems that the ALJ at best gave very little weight to plaintiff's complaint of incontinence.

See Dobrowolsky, 606 F.2d at 409. Generally, a court will not speculate as to the ALJ's findings. Id. In Wilson v. Weinberger, 398 F.Supp. 1071, 1073–74 (E.D.Pa. 1975), for example, the district court remanded to the Secretary when the hearing judge failed to make a direct finding as to the effect of subjective pain on a claimant's ability to work, since there was no adequate basis for the court to determine if the decision was based on substantial evidence. In the instant case, however, there is no need for the court to speculate about what the ALJ's finding regarding incontinence would be if he were ordered to make one. The only finding that is supported by substantial evidence is that plaintiff *does* suffer from incontinence. Therefore, there is no need to remand the case for a specific finding regarding incontinence.

The evidence that plaintiff suffers from urinary incontinence is essentially uncontroverted, and easily overwhelms what little evidence there may be to the contrary. Plaintiff underwent a total hysterectomy [6] and oophorectomy [7] on October 23, 1989, in order to remove bilateral endometriotic cysts. R. 32–33, 139–41. She testified at the hearing before the ALJ that she has suffered incontinence "continuously" since the surgery,[8] that medication "helped a little bit" but did not solve the problem, and that she has to go to the bathroom so many times each day that she "cannot count them." R. 33–35. She testified that she had to go to the bathroom three times before leaving her home for the 10:30 A.M. hearing, and that she had to go twice more

at the hearing office before the hearing began. During the hearing she requested a recess to go to the bathroom again. R. 35.

Plaintiff's testimony regarding incontinence is amply corroborated by her medical records. Approximately five months after her gynecological surgery, a report from her gynecology clinic noted "leakage of urine" and recommended a urology consultation. R. 105. Plaintiff was subsequently referred by her gynecological clinic to a urologist, Phillip C. Ginsberg, D.O., for an examination. R. 123. Dr. Ginsberg reported on April 23, 1990 that plaintiff had an unstable bladder, and that she had a positive Marshall stress test [9] consistent with stress urinary incontinence. His diagnosis was that Mac suffers from an unstable detrusor,[10] stress urinary incontinence,[11] and cystitis,[12] and he recommended Ditropan, a medication which is indicated for the treatment of incontinence.[13] R. 123. In a follow-up visit to her gynecological clinic one month after the examination by Dr. Ginsberg, the examining doctor noted Dr. Ginsberg's diagnosis and wrote that plaintiff had been "placed on Ditropan." R. 124.

The medical judgement of Dr. Ginsberg and the treating physicians at plaintiff's gynecological clinic is that she suffers from incontinence. The medical judgment of these doctors who examined and treated plaintiff for her incontinence "can be rejected only on the basis of contradictory medical evidence." Rossi v. Califano, 602 F.2d 55, 57 (3d Cir.1979); accord Allen v.

---

6. A hysterectomy is the removal of the uterus. Stedman's Medical Dictionary 686 (5th Unabridged Lawyers' ed. 1982).

7. An oophorectomy is the removal of the ovaries. Stedman's Medical Dictionary 984, 1007 (5th Unabridged Lawyers' ed. 1982).

8. Incontinence is a common side-effect of gynecological surgery performed on plaintiff. Merck Manual 1713–14 (15th ed. 1987).

9. See Merck Manual 1639–40 (15th ed. 1987).

10. A detrusor is a muscle which has the function of expelling a substance, in this case urine. Stedman's Medical Dictionary 385 (5th Unabridged Lawyers' ed. 1982).

11. Stress urinary incontinence is "leakage of urine as a result of coughing, straining, or some sudden voluntary movement, due to weakness of the muscles around the neck of the bladder and surrounding the vagina." Stedman's Medical Dictionary 702 (5th Unabridged Lawyers' ed. 1982).

12. Cystitis is inflammation of the bladder. Stedman's Medical Dictionary 356 (5th Unabridged Lawyers' ed. 1982).

13. Physicians Desk Reference 1332–33 (46th ed. 1992).

*Bowen*, 881 F.2d 37, 41 (3d Cir.1989). There is no such contradictory medical evidence in the record.

The ALJ apparently discounted the medical evidence of incontinence because he found that, apart from the one visit to Dr. Ginsberg, "[t]here is no evidence of ongoing urologic treatment to alleviate the incontinence or that any medication for its control was prescribed." R. 14, Decision at 4. This statement is not supported by substantial evidence. As described above, plaintiff was referred to Dr. Ginsberg when an examining physician at her gynecological clinic noted "leakage of urine." Dr. Ginsberg diagnosed incontinence and recommended Ditropan, a medication indicated for treatment of incontinence. In a follow-up visit to her gynecological clinic one month after the examination by Dr. Ginsberg, the examining doctor noted Dr. Ginsberg's diagnosis and wrote that plaintiff had been "placed on Ditropan." R. 124. Thus, the record contains evidence of both ongoing treatment and prescribed medication for incontinence.

The ALJ apparently attached weight to the fact that the record does not contain reports of plaintiff's incontinence by two of plaintiff's treating physicians, Clement Au, M.D. and Nicholas Truong, M.D. R. 13, Decision at 3. "In fact," wrote the ALJ in his decision, "Dr. Truong denied that the claimant complained of urinary incontinence." *Id.* The importance attached by the ALJ to these facts is misguided in several ways.

 It is true that Dr. Au and Dr. Truong are treating physicians for plaintiff, and the opinions of treating physicians

are to be given great weight in disability determinations. *Allen*, 881 F.2d at 41. However, the concept of "treating physician" cannot be used mechanically. A physician who is the treating physician for one ailment may have little or no knowledge of other ailments suffered by his or her patients. The record shows that Dr. Au and Dr. Truong were plaintiff's treating physicians for several complaints,[14] but not for her gynecological complaints, which were treated by the gynecology clinic at Albert Einstein Medical Center.[15] R. 105–46. As described above, the treating physicians at plaintiff's gynecological clinic sent her to a specialist in urology, Dr. Ginsberg, who diagnosed her as having urinary incontinence. Thus, the very fact that a treating physician's opinion must be given great weight should lead to crediting the opinions of plaintiff's gynecologists and Dr. Ginsberg over those of Dr. Au and Dr. Truong.

In addition, the record is completely silent as to Dr. Au's opinion of plaintiff's complaint of incontinence. The proper inference from silence about an issue in a physician's report is that the issue was not considered. *Allen*, 881 F.2d at 41. Thus, with respect to Dr. Au, the Secretary has not presented any medical evidence contrary to plaintiff's claim of incontinence.

The record is only slightly more revealing of Dr. Truong's opinion about plaintiff's incontinence, which consists of a five word response to a single interrogatory. Asked "Does the patient have urinary incontinence?", Dr. Truong replied "not that I know of." R. 162. This is not the sort of "contradictory medical evidence," *Rossi*,

---

**14.** Social Security Administration ("SSA") forms filled out for plaintiff during her application and for benefits and her request for reconsideration report that Dr. Au treated her for blood pressure, leg pain, hypertension and pain. R. 68, 76. She reported that Dr. Truong treated her for allergies and cold. R. 68. In "Reports of Contact" dated August 1, 1990 and September 20, 1990, SSA investigators reported that Dr. Au treated plaintiff for tennis elbow and mild hypertension. R. 101–04. In response to an interrogatory, Dr. Truong reported that he has treated plaintiff for degenerative joint disease of left knee, hypertension, hypercholesterolemia, post ovariectomy menopausis. R. 161.

**15.** The only evidence in the record that plaintiff received any gynecological treatment from anywhere other than the clinic at Albert Einstein is Dr. Truong's response to an interrogatory, where he reported that he has treated her for "post ovariectomy menopausis," among other things. R. 161. However, there is nothing in the record to indicate the extent or nature of that treatment. In contrast, the record contains 42 pages of records from the Albert Einstein Medical Center. R. 105–46.

602 F.2d at 57, which would be sufficient to reject the medical judgment and diagnosis of plaintiff's gynecological clinic and Dr. Ginsberg. There is no evidence in the record that Dr. Truong ever examined plaintiff for incontinence or even asked her about incontinence. Thus, Dr. Truong's statement is not a medical opinion that plaintiff does not suffer from incontinence. It is simply an expression of ignorance as to plaintiff's condition.

 Dr. Ginsberg's diagnosis that plaintiff suffers from incontinence was obtained by the use of objective medical tests. This objective medical evidence of incontinence is combined with plaintiff's testimony that she frequently needs to urinate. Courts in the third circuit have repeatedly confronted an analogous situation where a claimant's subjective testimony of pain is corroborated by competent medical evidence, and have uniformly concluded that in such a situation, the claimant's testimony of pain must be given great weight. *Green,* 749 F.2d at 1068; *Kent,* 710 F.2d at 115; *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981); *Dobrowolsky,* 606 F.2d at 409. Similarly, in the instant case plaintiff's subjective complaints of frequent need to urinate must be given great weight, since they are supported by objective medical evidence.

In spite of the medical evidence described above, which requires that great weight be given to plaintiff's testimony, the ALJ expressed "significant reservations with respect to the credibility of claimant's assertions with respect to her incontinence." R. 14, Decision at 4. The ALJ's negative evaluation of plaintiff's credibility appears to rest in part upon an erroneous finding of fact. During his discussion of plaintiff's credibility, the ALJ's decision refers negatively to "claimant's complaints of incontinence and that a sponge was left inside [her during surgery.]" R. 13. Because there is no medical evidence that a sponge was left inside plaintiff during her surgery, such a complaint by plaintiff would seem to impugn her credibility. However, there is absolutely no evidence in the record that plaintiff ever *claimed* that a sponge was left inside of her.[16] Thus, this aspect of the ALJ's negative evaluation of plaintiff's credibility was based upon an error of fact.

 Even if the ALJ had reason to doubt the credibility of plaintiff's testimony regarding her incontinence, that testimony should not have been discounted solely because the ALJ doubted her credibility. The third circuit has repeatedly held that when an SSI claimant's testimony as to pain is reasonably supported by medical evidence, the Secretary may not discount that pain without contrary *medical* evidence. *Chrupcala v. Heckler,* 829 F.2d 1269, 1275–76 (3d Cir.1987); *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985); *Green,* 749 F.2d at 1068; *Smith,* 637 F.2d at 972; *Atkins,* 690 F.Supp. at 389 ("Where the plaintiff's testimony as to pain is reasonably supported by medical evidence, the ALJ or Appeals Council may not discount plaintiff's pain without medical evidence which expressly contradicts plaintiff's testimony."). Similarly here, the ALJ should not have discounted plaintiff's testimony as to her incontinence unless there was *medical* evidence contrary to her assertions. As described above, the record does not contain such evidence.

The Secretary's final argument is that even if plaintiff does suffer from incontinence, "[t]here is no evidence in the record that Mac's urinary incontinence lasted or can be expected to last the requisite twelve month period," Defendant's Motion for Summary Judgment at 13, as required by 20 C.F.R. § 416.909 (in order for a claimant to be found unable to perform substantial

---

**16.** Plaintiff's counsel has suggested a possible explanation for the ALJ's mistake. Prior to the hearing, counsel showed the ALJ a "curious x-ray which was taken in the operating room on the date of her surgery." This x-ray, as described in the "Report of Diagnostic Imaging Examination," R. 142, is a "single supine view of the abdomen done in the Operating Room [and] shows an opaque foreign body, i.e., a sponge overlying the right iliac crest." The sponge was apparently outside of plaintiff's body when the x-ray was made. *See* Plaintiff's Motion for Summary Judgment at 7, n. 6. Whatever the basis for the ALJ's mistake may be, there is no indication in the record that plaintiff ever claimed the sponge had been left inside her.

gainful activity by reason of a medically determinable impairment, such impairment must have lasted, or be expected to last for twelve continuous months).[17] The Secretary's argument is not supported by the record. Plaintiff testified at the February 22, 1991, hearing that she had suffered from incontinence continuously since her surgery in October 1989, well over one year earlier. Her gynecological clinic noted leakage of urine on March 29, 1990, nearly eleven months before the hearing. And Dr. Ginsberg's diagnosis of incontinence dates from April 23, 1990, some ten months before the hearing. Given this combination of objective medical data and plaintiff's testimony, the court has no difficulty in determining that plaintiff's incontinence meets the twelve month durational requirement of the Secretary's regulations.

## III. CONCLUSION

The record shows that plaintiff suffers from urinary incontinence, a nonexertional impairment. Therefore, the ALJ erred when he applied the medical-vocational guidelines to find plaintiff not disabled, and the Secretary's motion for summary judgment must be denied. Plaintiff's motion for summary judgement must also be denied, however, since a district court can reverse a decision of the Secretary and award benefits without a remand only when disability is clearly established by the record. *Gilliland,* 786 F.2d at 184. In the instant case, plaintiff's disability is not clearly established from the record. The record simply shows that the ALJ erred when he applied the grids to plaintiff in spite of her nonexertional limitations. Therefore, this case must be remanded for further proceedings. In particular, the

ALJ must call a vocational expert to determine if plaintiff is able to perform substantial gainful activity, given her exertional and nonexertional impairments and all other relevant factors.[18] The opinion of the vocational expert may depend upon matters that are not now in the record. For example, the severity of plaintiff's incontinence may well have a bearing on her ability perform substantial gainful activity. Therefore, the ALJ may make use of any other evidence or witnesses which are necessary for a proper determination.

An appropriate order follows.

## ORDER

AND NOW, this 8th day of January, 1993, upon consideration of the cross-motions for summary judgment, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is DENIED.

2. Defendant's motion for summary judgment is DENIED.

3. This case is REMANDED to the Secretary of Health and Human Services for proceedings consistent with the attached memorandum.

---

**17.** The durational issue was not raised at the administrative level. However, because of our broad scope of review, we may still consider it here. *See Wallace,* 722 F.2d at 1153, n. 3.

**18.** Plaintiff argues in passing that the grid rule applied by the ALJ is predicated upon the assumption that the claimant is illiterate *or* unable to communicate in English. Plaintiff argues that the rule cannot be applied to her, since she is both illiterate *and* unable to communicate in English. Plaintiff's Motion for Summary Judgment at 10, n. 8 (citing *Martinez v. Heckler,* 735 F.2d 795, 796–97 (5th Cir.1984)). The fifth cir-

cuit has so held, *Martinez,* but this issue has never been addressed in the third circuit. Since we remand for other reasons, we need not reach this issue. Instead we note that on remand "full consideration must be given to all of the relevant factors in the case." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2); *Burnam,* 682 F.2d at 458. Since the Secretary's regulations recognize inability to communicate in English and illiteracy as relevant factors, plaintiff's combined illiteracy and inability to communicate on English must be taken into account on remand.