

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-28-2007

# Melvin v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4400

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Melvin v. Comm Social Security" (2007). *2007 Decisions.* Paper 1557.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1557

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4400

———

REGINALD MELVIN,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 03-cv-01370)
District Court Judge: Honorable Dennis M. Cavanaugh

———

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
June 30, 2006

Before: BARRY, VAN ANTWERPEN, and JOHN R. GIBSON,* Circuit Judges.

(Filed February 28, 2007)

———

OPINION OF THE COURT

———

JOHN R. GIBSON, Circuit Judge.

_____

* The Honorable John R. Gibson, Senior Circuit Judge, United States Court of Appeals
for the Eighth Circuit.

Reginald Melvin appeals the District Court order affirming the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits. Melvin had to stop working as a bus driver after the State of New Jersey suspended the passenger endorsement on his commercial driver's license on account of his cardiovascular disease. He argues that the ALJ failed to explain his finding that Melvin did not have a listed impairment and ignored probative medical evidence in assessing Melvin's residual functional capacity to perform medium work. Melvin also contends that the ALJ improperly used the medical-vocational grids in the Social Security regulations as a "framework" to conclude that Melvin's nonexertional limitation against commercial driving did not erode his occupational base sufficiently to render him disabled. The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g), and appellate jurisdiction exists under 28 U.S.C. § 1291. We will AFFIRM.

At the time the ALJ heard Melvin's claim for social security benefits, Melvin was fifty-five years old, had an eleventh-grade education, and had worked primarily as a commercial bus and truck driver. The State of New Jersey suspended the passenger endorsement on his commercial driver's license in September 1999 because Melvin's physical exam revealed scarring on the walls of his heart, suggesting that he had suffered undetected heart attacks. After his application for disability benefits was denied initially and on reconsideration, he requested a hearing before an ALJ. At the hearing and in questionnaires submitted to the Commissioner, Melvin complained of symptoms including chest pain, shortness of breath, numbness in his left arm, frequent urination,

headaches, and dizziness. The reports of several doctors who had treated and examined Melvin were before the ALJ, and cardiologist Dr. Donald P. Peyser testified at the hearing. Melvin had been diagnosed with diabetes, hypertension, obesity, nicotine depression, and poor eyesight; he partially controlled his diabetes and hypertension with medication and wore glasses to correct his vision. While he complained of chest pain at some medical visits, at others he voiced no complaints. Without the results of Melvin's cardiac catheterization test, Dr. Peyser was unable to conclude that Melvin had "any cardiac disease whatsoever."

The ALJ ultimately denied Melvin's claim for benefits, employing the familiar five-step analysis set forth in 20 C.F.R. § 404.1520. The ALJ found that Melvin was not performing substantial gainful work and that his combination of impairments was severe but did not meet or medically equal any impairment listed in the Social Security regulations. The ALJ further found that Melvin did not have the capacity to do his past work as a bus driver because the State's action on his driver's license legally prevented him from operating commercial vehicles, but that Melvin retained the residual functional capacity to perform medium work. Treating Melvin's license suspension as a nonexertional limitation against operating commercial vehicles, the ALJ concluded that Melvin was not disabled because the national economy contained a sufficient number of medium exertion jobs that did not require commercial driving.

Our review "is identical to that of the District Court, namely to determine whether there is substantial evidence to support the Commissioner's decision." Plummer v. Apfel,

186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

First, Melvin challenges the ALJ's finding that his impairments, though severe, did not meet or medically equal any impairment listed in the Social Security regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1. In reaching this conclusion, the ALJ stated:

> The requirements of the most similar listings, sections 4.03 (hypertensive cardiovascular disease), 4.04 (ischemic heart disease) and 9.08 (diabetes mellitus) have been given particular attention in reaching this conclusion, but the clinical and laboratory evidence does not approach the levels contemplated by the listings.

Melvin likens the ALJ's analysis of his impairment to that of the ALJ in Burnett v. Commissioner of Social Security Administration, 220 F.3d 112 (3d Cir. 2000), where this Court held inadequate the ALJ's "conclusory statement" that the claimant's "severe musculoskeletal impairment" did not meet or equal a listed impairment, id. at 119, 117. Unlike the ALJ in Burnett, however, the ALJ in this case explained his findings in sufficient detail to allow us to conduct "meaningful judicial review." Id. at 119. The ALJ identified the three listings relevant to Melvin's impairments and described the medical evidence in the record, including Melvin's symptoms and the findings of various doctors who examined him. Melvin's diabetes and hypertension were partially controlled with medication. He had vision problems, but, with corrective lenses, his visual acuity was "excellent." Finally, although Melvin had at times reported what might seem to be heart-

-4-

related symptoms such as chest pain and shortness of breath, he performed well on his exercise test, and Dr. Peyser concluded that his episodes were atypical for cardiac problems. After the hearing, the ALJ left the record open so that Melvin could submit the results of a cardiac catheterization procedure he had recently undergone, but Melvin never submitted the report. Substantial evidence supports the ALJ's finding that Melvin's impairments did not meet or medically equal a listed impairment.

Melvin next argues that, in finding that he had the residual functional capacity to do medium exertion work, the ALJ gave undue weight to paid expert Dr. Peyser's testimony and failed to consider Melvin's subjective testimony on his inability to work and the report of his treating physician. An ALJ "must give great weight to a claimant's subjective testimony" of his inability to work if the claimant's testimony is "supported by competent medical evidence." Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999). In this case, Melvin testified that he had chest pains and had difficulty lifting and holding everyday objects. The medical evidence does not support this testimony, however, because Melvin's exercise test results were strong, his treating physician and other doctors concluded that he was able to perform various work-related physical activities, his treating physician reported that he currently had no chest discomfort, Dr. Peyser was unable to conclude that he had "any cardiac disease whatsoever," and Melvin failed to submit evidence to the contrary (i.e., the results of his cardiac catheterization test). Melvin correctly points out that an ALJ must give great weight to a treating physician's opinion unless other medical evidence contradicts it.

Allen v. Bowen, 881 F.2d 37, 41-42 (3d Cir. 1989). Contrary to Melvin's assertions, the ALJ did that here, giving "significant" weight to the opinion of his treating physician, Dr. Govinda Raju. Dr. Raju's opinion was consistent with other medical evidence suggesting that the self-reported severity of Melvin's symptoms simply was not consistent with his medically documented impairments. The record belies Melvin's contention that the ALJ relied on expert cardiologist Dr. Peyser's unfavorable testimony to the exclusion of others, where the ALJ recounted the medical evidence from all sources, including Dr. Raju. Dr. Raju opined that Melvin had "good effort tolerance" and could do work-related physical activities "without difficulty." Physicians from the Disability Determination Service concluded that Melvin could lift, carry, push and/or pull fifty pounds occasionally and twenty-five pounds frequently; walk and/or stand for a total of about six hours in an eight-hour day with normal breaks; sit for a total of about six hours in an eight-hour day with normal breaks; and perform all other physical work-related activities. Melvin himself testified that he was able to do his laundry, keep his apartment clean, walk half a block to the grocery store, attend support group meetings, and have lunch out with friends. Thus, substantial evidence supports the ALJ's conclusion that Melvin had the residual functional capacity to perform medium work activity.

Finally, Melvin contends that the ALJ improperly used the medical-vocational grids, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 3, Rule 203.12, as a "framework" for determining that he was not disabled without taking additional vocational evidence to determine how his nonexertional limitation affected his occupational base as required by

Sykes v. Apfel, 228 F.3d 259, 261 (3d Cir. 2000). The ALJ properly concluded that, because the suspension of the passenger endorsement on Melvin's license barred him from commercial driving, Melvin was unable to perform his past work and had no transferable skills. The ALJ additionally found that Melvin had a "nonexertional limitation against operating commercial vehicles," and, without citing evidence, concluded that "the claimant's nonexertional limitation erodes his occupational base somewhat; but does not preclude most medium exertion occupations." Under Sykes, an ALJ cannot rely solely on medical-vocational grids but must take additional vocational evidence or provide notice to the claimant of his intention to use official notice in determining whether the claimant's nonexertional impairments significantly erode his occupational base. Sykes, 228 F.3d at 261; see also Soc. Sec. Acquiescence Ruling 01-1(3), 2001 WL 65745, at *4 (2001). The ALJ did neither in this case.

Sykes does not apply in this instance, however, because Melvin's restriction against commercial driving is not a true nonexertional limitation, despite the ALJ's label to the contrary. A nonexertional limitation must be "medically determinable." S.S.R. 85-15, 1985 WL 56857, at *2 (1985) (examples of nonexertional limitations include mental impairments, postural and manipulative difficulties, hearing and visual impairments, and environmental restrictions such as a medical need to avoid extremes of temperature and noise). Melvin's restriction against operating commercial vehicles was a matter of his legal eligibility, not his physical and mental capacity, to perform commercial driving under criteria set by the State of New Jersey. While the underlying reason for the State's

action on Melvin's license was based on evidence that he had cardiovascular disease and the ALJ gave significant weight to the functional implications of the State's policy that individuals with certain cardiovascular diseases are not physically qualified to perform commercial driving, the ALJ ultimately rejected Melvin's contention that he had a disabling risk of heart attacks that limited the work he could perform. Substantial evidence supports this conclusion, where Melvin's heart-related symptoms were scant and he stopped working as a bus driver only when the passenger endorsement on his license was actually suspended. Melvin had undergone a cardiac catheterization procedure, which could have shown definitively whether he had a heart condition, but he never submitted the test results to the ALJ. As the medical expert remarked, those test results also might have enabled Melvin to obtain reinstatement of the passenger endorsement on his license from the State. Because Melvin's restriction against operating commercial vehicles was primarily a matter of his legal eligibility, not his medical capacity, it was not a true nonexertional limitation, and the additional evidentiary requirements of Sykes do not apply.

Nor did Melvin's restriction against commercial driving affect his occupational base under the grids. The grids applied to Melvin were for "medium work," which means unskilled work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 3, Rule 203.00. Jobs that require a commercial driver's license are semiskilled, see S.S.R. 83-10, 1983 WL 31251, at *6 (1983), so they were never part of his occupational base under the grids. Thus, substantial evidence supports the ALJ's conclusion that Melvin was not disabled even

though he could not legally perform jobs that require commercial driving.

We will AFFIRM the judgment of the District Court.