**Maria FLECHA, Plaintiff,**

v.

**Hon. Donna E. SHALALA, Secretary of Health and Human Services (WGB), Defendant.**

**Civ. A. No. 93–4062.**

United States District Court,
D. New Jersey.

June 23, 1994.

Lawrence E. Kazmierczak, Oakland, NJ, for plaintiff.

Faith S. Hochberg, U.S. Atty. by Susan J. Steele, Sp. Asst. U.S. Atty., Newark, NJ, for defendant.

## OPINION

BASSLER, District Judge:

The plaintiff, MARIA FLECHA, brings this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff seeks review of the final decision of the Secretary of Health and Human Services ("Secretary") denying her disability insurance benefits and supplemental security income ("SSI"). For the following reasons the Secretary's decision is affirmed.

## I. BACKGROUND

On February 13, 1991, plaintiff filed an application for a period of disability, disability insurance benefits and SSI, alleging the inability to perform any substantial gainful activity since June 3, 1987, due to chronic lower back pain secondary to osteoarthritis and bronchial asthma. R.14.[1] Plaintiff's application was denied initially and upon reconsideration, based upon the finding that she could perform her past relevant work as a machine operator. R.14. On September 15, 1992, plaintiff filed a timely request for an administrative hearing to be held before an administrative law judge ("ALJ"). R.14. An administrative hearing was held before ALJ Frederick Harap on February 3, 1993. R.14. The ALJ rendered his decision on February 22, 1993, finding that plaintiff: is a forty-two year old "younger individual," has severe bronchial asthma and degenerative arthritis

of her thoracolumbar spine, is unable to perform her past relevant work as a machine operator, and is illiterate in English. The ALJ found however, that claimant is not under a "disability" as defined in the Social Security Act, and, thus, is ineligible for benefits under either program. The Appeals Council denied plaintiff's request for review, and claimant commenced an action in this court on September 16, 1993.

## II. DISCUSSION

■ In reviewing the final decision of the Secretary's denial of SSI and disability benefits, a court may examine the Secretary's factual findings only to determine if they are supported by substantial evidence. 42 U.S.C. §§ 405(g) and 1383(c)(3); see also Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Mason v. Shalala, 994 F.2d 1058, 1064 (3rd Cir.1993). Substantial evidence is defined as being "more than a mere scintilla" and such that "a reasonable mind might accept [it] as adequate to support a conclusion." Richardson, 402 U.S. at 401, 91 S.Ct. at 1427 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

■ In determining disability claims, the Secretary has promulgated a five step sequence. 20 C.F.R. §§ 404.1520 and 416.920. The first two steps involve threshold determinations that the claimant is not presently working, and has an impairment which significantly limits her physical or mental ability to carry out basic work activities. 20 C.F.R. §§ 404.1520(a) through (c) and 416.920(a) through (c). The third step awards disability benefits if the claimant's impairment is listed in Appendix 1, Subpart P, of Regulations Number 4. 20 C.F.R. § 404.1520(d). If the claimant's impairment is not included in Appendix 1, the fourth step is to determine whether the claimant, despite her severe impairment, has the residual functional capacity to perform her past relevant work. If the claimant is unable to perform her past work, the fifth step is to consider the claimant's residual functional capacity, and her age, education, and past work experience, to deter-

---

1. "R." refers to the administrative record.

mine if she can perform other work in the national economy. 20 C.F.R. § 404.1520(f). For the first four steps, the claimant bears the burden of proving her disability. However, for the fifth step, the Secretary bears the burden of proof. *Rossi v. Califano*, 602 F.2d 55, 57 (3rd Cir.1979); *Ferguson v. Schweiker*, 765 F.2d 31, 36 (3rd Cir.1985).

In this action, the plaintiff challenges the Secretary's final decision on three grounds. First, plaintiff contests the ALJ's determination in the second step that she does not have any impairments which significantly limit her ability to perform basic work activities. Second, plaintiff argues that the Secretary failed to fulfill her burden in the fifth step by not showing a reasonable availability of jobs that the claimant is capable of performing to support the denial of benefits. Third, plaintiff contends that the Secretary failed to develop a complete administrative record to facilitate review of the determination of not disabled.

### A. *The ALJ's determination of not disabled.*

■ Plaintiff argues that the ALJ's decision is contrary to the medical evidence presented in the record. Plaintiff points to several medical reports, claiming that they constitute ample evidence to prove claimant's inability to work.

Plaintiff's current treating physician, Dr. Jose L. Rodriguez, reported on February 8, 1991 that plaintiff was disabled and unable to work due to chronic low back pain with osteoarthritis. R.16. Exhibit 21. Furthermore, in a report dated on June 2, 1992, Dr. Rodriguez asserted that plaintiff was unable to work because of lower back pain with radiculitis, osteoarthritis of the lumbosacral spine and both knees, chronic bronchial asthma, and obesity. R.16; Exhibit 25.

■ A treating physician's opinion cannot be rejected unless the ALJ points to other medical evidence of record. *Allen v. Bowen*, 881 F.2d 37, 41 (3rd Cir.1989). The ALJ's decision, however, is not undermined by evidence that would support a different conclusion, so long as there is substantial support in the record for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). An ALJ's conclusions regarding a claimant's residual functional capacity must be corroborated by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 29 (3rd Cir.1986).

The ALJ found that the plaintiff has severe chronic bronchial asthma and degenerative arthritis of her thoracolumbar spine, but that she does not have an impairment or combination of impairments listed in, or medically equivalent to one listed in, Appendix 1, Subpart P, Regulations Number 4. R.18. The ALJ thus held that claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work, except for work requiring heavy lifting, sustained standing or walking, or exposure to excessive pulmonary irritants. R.18.

In support of his decision, the ALJ cited a number of medical reports prepared by examining physicians. Dr. D. Mathews, an examining consultant, certified that plaintiff had normal gait, and got on and off the examination table without assistance. Furthermore, Dr. Mathews found that plaintiff could flex her lumbar spine to sixty degrees out of a possible ninety degrees. An examination of the cervical spine showed the normal range of motion in flexion and extension. Dr. Mathews also reported that there were no signs of muscle spasm or muscle atrophy and that the "neurological examination was intact." R.15; Exhibit 24. Similarly, Dr. N. Vossough, another examining consultant, attested that plaintiff had normal range of motion of all joints and extremities, and no neurological deficits. R.16; Exhibit 26. Dr. S. Wilchfort, a third examining consultant, reported that claimant ambulated with normal gait and displayed normal motion of all joints and extremities. R.15; Exhibit 35.

With regard to plaintiff's bronchial asthma claim, in 1989, Dr. Stephen P. Ferrero, who had previously treated claimant for her allergies, indicated that the claimant had "no functional limitations." R.15; Exhibit 20. Dr. Fortunata T. Tieng, a former treating physician, noted that plaintiff's response to treatment had been satisfactory, that her asthma attacks were infrequent and that claimant had not been hospitalized for her asthma. R.15; Exhibits 22, 23. Dr. Wilch-

fort attested that plaintiff had no breathing difficulties, and that the pulmonary function studies were compatible with only mild restrictive lung disease. R.15; Exhibit 35.

In discounting Dr. Rodriguez's opinion that plaintiff was unable to work, the ALJ relied upon the other physicians' medical reports which conflicted with Dr. Rodriguez's opinion. The ALJ also relied upon those reports to dismiss plaintiff's subjective complaints. The other consulting physicians had found no significant motor, sensory, or reflex deficits which would be expected in an individual who alleges such debilitating pain, R.16, and subjective complaints by themselves cannot be the basis for finding a disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529. In light of all the medical reports and other evidence, the ALJ found the claimant not to be precluded from performing sedentary work. R.17.

Based on the aforementioned medical reports, there was substantial evidence to support the ALJ's determination that the plaintiff was able to perform sedentary work.

### B. *Availability of Jobs*

■ Plaintiff further argues that the ALJ failed to fulfill the burden of showing a reasonable availability of jobs that the claimant is capable of performing in denying SSI and disability benefits. However, this claim lacks merit.

■ If a claimant is unable to perform her past work, the Secretary is to consider the claimant's residual functional capacity and her age, education, and past work experience to determine if she can perform other work in the national economy. 20 C.F.R. § 404.1520(f). In establishing that the plaintiff is able to perform other work in the national economy, the Secretary bears the burden of proof. *Rossi v. Califano*, 602 F.2d 55, 57 (3rd Cir.1979). If the claimant's residual functional capacity and other relevant characteristics (age, education, work experience) fit exactly into one of the "grids" in the Secretary's medical-vocational guidelines,

then the guidelines are used to meet the Secretary's burden of proof. *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir.1984); 20 C.F.R. part 404, Subpart P, App. 2, § 200.00.

Since the ALJ found that plaintiff was unable to perform her past relevant work as a machine operator, he moved to the fifth step in determining a disability claim and considered the claimant's residual functional capacity, age, education, and past work experience, to determine if she could perform other work in the national economy. The ALJ found the plaintiff to be a younger individual (42 years of age) who was illiterate in English and whose past relevant work was unskilled. R.18. The ALJ's factual findings, combined with plaintiff's residual functional capacity for sedentary work corresponds with medical-vocational Rule 201.23 which compels a finding of not disabled. 20 C.F.R. Part 404, Subpart P, App. 2. *See* attached Exhibit A. Furthermore, plaintiff's argument that a vocational expert should have been used is also without merit. Since the ALJ properly discounted the plaintiff's subjective complaints of pain, the use of a vocational expert becomes discretionary. 20 C.F.R. § 404.1566(e).

■ In a letter dated April 5, 1994, additional briefing was requested from both parties by this Court on the issue of whether the application of medical-vocational Rule 201.23 would be precluded if plaintiff was found to be both illiterate and unable to communicate in English.[2] This issue has been raised, but never decided in the Third Circuit. *Mac v. Sullivan*, 811 F.Supp. 194, 203 (E.D.Pa.1993). As a result, plaintiff argues that since medical-vocational Rule 201.23 requires that the claimant be illiterate *or* unable to communicate in English, the fact that she is both illiterate *and* unable to communicate in English precludes Rule 201.23 from applying. *See Martinez v. Heckler*, 735 F.2d 795, 796–97 (5th Cir.1984) ("if claimant is both illiterate and unable to communicate in English, he

2. The ALJ found claimant to be illiterate in English. R.18. However, no determination was made as to whether plaintiff was unable to communicate in English. At the administrative hearing before the ALJ, an interpreter was used since claimant stated that she spoke and understood only "a little" English. R.27.

does not fall within the criteria set out in Rule 201.23"). *See also* attached Exhibit A. However, this Court finds otherwise.

The C.F.R. defines the word "illiteracy" as the inability to read or write. 20 C.F.R. § 404.1564(b)(1). While the phrase "inability to communicate" is not explicitly defined , it is explained to include the "ability to speak, read and understand English." 20 C.F.R. § 404.1564(b)(5). Although the phrase "inability to communicate" is not technically defined to include writing, one who is unable to speak, read and understand is unable to write. Therefore, if an individual is unable to communicate in English, by definition, she is also considered to be illiterate in English.

The Social Security Administration agrees that illiteracy is subsumed under the inability to communicate in English. Acquiescence Ruling 86–3(5). In an Acquiescence Ruling to *Martinez v. Heckler,* 735 F.2d 795 (5th Cir.1984), the Secretary stated that

> in formulating the grid rules, it was assumed that a person who is unable to communicate in English would naturally be illiterate in English. Illiteracy is subsumed under inability to communicate in English. It has thus been longstanding SSA policy that the rules applying to individuals who are illiterate *or* unable to communicate in English also apply to those who are illiterate *and* unable to communicate in English.

Acquiescence Ruling 86–3(5). Although acquiescence rulings do not have the force and effect of law, they constitute Social Security Administration interpretations of its own regulations and the statute which it administers. Accordingly, Social Security rulings are entitled to deference, except when they are plainly erroneous or inconsistent with the Act. *Walker v. Secretary of Health and Human Servs.,* 943 F.2d 1257, 1259–60 (10th Cir.1991). Since Acquiescence Ruling 86–3(5) is not plainly erroneous and does not conflict with the statutory language, this Court adopts the Social Security Administration's ruling.

Therefore, in light of the Social Security Administration's Acquiescence Ruling, this Court does not find the Fifth Circuit decision in *Martinez v. Heckler* controlling. Acquies-

cence Ruling 86–3(5) necessitates the finding that medical-vocational Rule 201.23 applies regardless of whether the claimant is both illiterate and unable to communicate in English (*i.e.* just unable to communicate in English), or merely illiterate.

C.  *ALJ's duty to fully and fairly develop the record.*

The plaintiff also contends that the Agency failed to develop a complete administrative record to facilitate the review of the Secretary's determination.

Title 20, Section 404.1512(d) of the C.F.R. provides that the Secretary has the responsibility to develop the claimant's "complete medical history," which is defined as records of the plaintiff's medical sources covering at least the preceding twelve months. If the evidence is insufficient to determine whether the plaintiff is disabled, then the Secretary will try to obtain additional evidence. 20 C.F.R. § 404.1527(c)(3). Here, the Secretary examined all the available medical evidence, as well as plaintiff's testimony, and had no need for further evidence. Furthermore, the plaintiff fails to illuminate what she believed was missing from the record. Therefore, this Court holds that the ALJ satisfied his burden in developing a complete record.

III.  *CONCLUSION*

For the aforementioned reasons, this Court affirms the Secretary's decision to deny the claimant disability insurance benefits and supplemental security income.

*ORDER*

This matter having come before the Court by way of plaintiff's complaint for review of a final decision of the Secretary of the Department of Health and Human Services ("Secretary"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), denying plaintiff her disability insurance benefits and Supplemental Security Income; and

The Court having considered the joint stipulation of facts, the administrative record below, and the pleadings and briefs of the parties; and

For the reasons set forth in the Court's opinion filed this day; and

For good cause shown;

It is on this 23rd day of June, 1994 ORDERED that the decision of the Secretary be and hereby is AFFIRMED.

vocationally relevant past work, which had consisted of unskilled agricultural field work; his or her particular characteristics do not specifically meet any of the rules in appendix 2, because this individual cannot perform the full range of work defined as sedentary. In light of the adverse factors which further narrow the range of sedentary work for which this individual is qualified, a finding of disabled is appropriate.

(ii) While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. Similarly the lack of relevant work experience would have little significance since the bulk of unskilled jobs require no qualifying work experience. Thus, the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 even if they are illiterate or unable to communicate in English.

TABLE NO. 1—RESIDUAL FUNCTIONAL CAPACITY: MAXIMUM SUSTAINED WORK CAPABILITY LIMITED TO SEDENTARY WORK AS A RESULT OF SEVERE MEDICALLY DETERMINABLE IMPAIRMENT(S)

| Rule | Age | Education | Previous work experience | Decision |
|---|---|---|---|---|
| 201.01 | Advanced age | Limited or less | Unskilled or none | Disabled |
| 201.02 | ...do | ...do | Skilled or semiskilled—skills not transferable | Do |
| 201.03 | ...do | ...do | Skilled or semiskilled—skills transferable [1] | Not disabled |
| 201.04 | ...do | High school graduate or more—does not provide for direct entry into skilled work [2] | Unskilled or none [2] | Disabled |
| 201.05 | ...do | ...do | ...do | Not disabled |
| 201.06 | ...do | High school graduate or more—does not provide for direct entry into skilled work [2] | Skilled or semiskilled—skills not transferable [2] | Disabled |
| 201.07 | ...do | ...do | Skilled or semiskilled—skills transferable [2] | Not disabled |
| 201.08 | ...do | High school graduate or more—provides for direct entry into skilled work [2] | Skilled or semiskilled—skills not transferable [2] | Do |
| 201.09 | Closely approaching advanced age | Limited or less | Unskilled or none | Disabled |
| 201.10 | ...do | ...do | Skilled or semiskilled—skills not transferable | Disabled |
| 201.11 | ...do | ...do | Skilled or semiskilled—skills transferable | Not disabled |
| 201.12 | ...do | High school graduate or more—does not provide for direct entry into skilled work [2] | Unskilled or none | Disabled |
| 201.13 | ...do | High school graduate or more—more—provides for direct entry into skilled work [2] | ...do | Not disabled |
| 201.14 | ...do | High school graduate or more—does not provide for direct entry into skilled work [2] | Skilled or semiskilled—skills not transferable | Disabled |
| 201.15 | ...do | ...do | Skilled or semiskilled—skills transferable | Not disabled |
| 201.16 | ...do | High school graduate or more—provides for direct entry into skilled work [2] | Skilled or semiskilled—skills not transferable | Do |
| 201.17 | Younger individual age 45-49 | Illiterate or unable to communicate in English | Unskilled or none | Disabled |
| 201.18 | ...do | Limited or less—at least literate and able to communicate in English | ...do | Not disabled |
| 201.19 | ...do | Limited or less | Skilled or semiskilled—skills not transferable | Do |

TABLE NO. 1—RESIDUAL FUNCTIONAL CAPACITY: MAXIMUM SUSTAINED WORK CAPABILITY LIMITED TO SEDENTARY WORK AS A RESULT OF SEVERE MEDICALLY DETERMINABLE IMPAIRMENT(S)—Continued

| Rule | Age | Education | Previous work experience | Decision |
|---|---|---|---|---|
| 201.20 | ...do | ...do | Skilled or semiskilled—skills transferable | Do |
| 201.21 | ...do | High school graduate or more | Skilled or semiskilled—skills not transferable | Do |
| 201.22 | ...do | ...do | Skilled or semiskilled—skills transferable | Do |
| 201.23 | Younger individual age 18-44 | Illiterate or unable to communicate in English | Unskilled or none | Do [*] |
| 201.24 | ...do | Limited or less—at least literate and able to communicate in English | ...do | Do [*] |
| 201.25 | ...do | Limited or less | Skilled or semiskilled—skills not transferable | Do [*] |
| 201.26 | ...do | ...do | Skilled or semiskilled—skills transferable | Do [*] |
| 201.27 | ...do | High school graduate or more | Unskilled or none | Do [*] |
| 201.28 | ...do | ...do | Skilled or semiskilled—skills not transferable | Do [*] |
| 201.29 | ...do | ...do | Skilled or semiskilled—skills transferable | Do [*] |

[1] See 201.00(f).
[2] See 201.00(d).
[3] See 201.00(g).
[4] See 201.00(h).

202.00 Maximum sustained work capability limited to light work as a result of severe medically determinable impairment(s). (a) The functional capacity to perform a full range of light work includes the functional capacity to perform sedentary as well as light work. Approximately 1,600 separate sedentary and light unskilled occupations can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy. These jobs can be performed after a short demonstration or within 30 days, and do not require special skills or experience.

(b) The functional capacity to perform a wide or full range of light work represents substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs and, thus, generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competences for unskilled work.

(c) However, for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled. Ordinarily, even a high school education or more which was completed in the remote past will have little positive impact on effecting a vocational adjustment unless relevant work experience reflects use of such education.

(d) Where the same factors in paragraph (c) of this section regarding education and work experience are present, but where age, though not advanced, is a factor which significantly limits vocational adaptability (i.e., closely approaching advanced age, 50-54) and an individual's vocational scope is further significantly limited by illiteracy or inability to communicate in English, a finding of disabled is warranted.

(e) The presence of acquired skills that are readily transferable to a significant range of semi-skilled or skilled work within an individual's residual functional capacity would ordinarily warrant a finding of not disabled regardless of the adversity of age, or whether the individual's formal education is commensurate with his or her demonstrated skill level. The acquisition of work skills demonstrates the ability to perform work at the level of complexity demonstrated by the skill level attained regardless of the individual's formal educational attainments.

(f) For a finding of transferability of skills to light work for individuals of advanced age who are closely approaching retirement age (age 60-64), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry.