Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 11, 2003        Decided May 16, 2003

No. 01-5307

Narayanan Krishnan, for Narayanan Deviprasad,
Appellant

v.

Jo Anne B. Barnhart, Commissioner,
Social Security Administration,
Appellee

———

Appeal from the United States District Court
for the District of Columbia
(No. 98cv02059)

———

*Paul Schiff Berman*, appointed by the court, argued the cause and filed the briefs for appellant.

*Fred E. Haynes*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, *R. Craig Lawrence*, *Mark E. Nagle*, *Kenneth Leonard Wainstein*, *Doris D. Coles–Huff* and *Paul*

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Mussenden*, Assistant U.S. Attorneys, and *Daniel Balsam*, Attorney, Social Security Administration.

Before: RANDOLPH and ROGERS, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The underlying issue in this case is whether a non-U.S. citizen applying for disability benefits under the Social Security Act has satisfied an exception to the general rule that alien beneficiaries cannot receive benefits if they have resided outside the United States for six consecutive calendar months, 42 U.S.C. §§ 402(t)(1)(A); 402(t)(4)(A–B) (2000). As the case comes to this court on appeal from a judgment affirming the denial of benefits following a remand to the Social Security Administration ("SSA"), it involves an unauthorized remand by the district court to an agency that failed to fulfill its regulatory responsibilities to assist the applicant. Notwithstanding these procedural errors, because the claimant has failed to make a prima facie showing that he was entitled to receive benefits, we affirm the judgment affirming the agency's denial of benefits.

## I.

The qualification for benefits at issue revolves around the claimant's assertion that he had worked the requisite time in qualified employment to come within an exception to the general ban on alien beneficiaries receiving benefits. Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, provides monthly insurance benefits to "qualified" individuals who the SSA determines are unable to work because of a disability. *See also id.* at § 423. Whether a person "qualifies" for benefits depends largely on whether he has acquired the requisite number of "quarters of coverage," or "QCs." *See id*. at § 413; 20 C.F.R. § 404.101(a) (2002). For calendar years since 1978, the number of QCs that a worker earns is based on a comparison of his total "covered" earnings to the amount designated in SSA's regulations as sufficient to qualify for one QC during that year. 42 U.S.C. § 413; 20 C.F.R.

§§ 404.140(c), 404.143(a); *see also* 20 C.F.R. Pt. 404, Subpt. B, App. Thus, a worker earns one QC if his total covered earnings equal the amount designated in the regulations as sufficient to qualify for one QC during that year, and a worker receives two QCs by earning twice the amount specified in the regulations for a single QC. 20 C.F.R. § 404.143(a). A worker cannot earn more than four QCs in any given year, *id.*, but because the system is based on total annual earnings, an individual need not work the entire year to earn four QCs. For instance, a person could work for one quarter of the calendar year and earn four QCs if his covered earnings during that period were four times the amount required by regulation for one QC. Similarly, a person could earn two QCs if his covered earnings were twice the amount required for one QC whether he worked for three days or half of the year or for the full calendar year.

Importantly, only earnings that are "covered" under social security count toward the calculation of a worker's QCs. *See id.* at §§ 404.1001, 404.1012. Work performed within the United States is generally covered, subject to a few exceptions. *Id.* at § 404.1004. The earnings of students who work as employees of the school they are attending, for example, are not "covered" under social security. *Id.* at § 404.1028. Likewise, on-campus work performed by foreign students attending school in the United States is excluded from employment that is covered for purposes of calculating QCs. *Id.* at § 404.1036.

Additional provisions of the Social Security Act apply to non-U.S. citizens attempting to receive disability insurance benefits. As pertinent here, § 402(t) of the Act provides that alien beneficiaries cannot receive benefits for any month that occurs after they have been outside the United States for six consecutive calendar months. 42 U.S.C. § 402(t)(1)(A); *see also* 20 C.F.R. § 404.460(a). This so-called "non-payment provision" has two relevant exceptions: An alien beneficiary who has accrued at least forty QCs, or who has resided in the United States for a period totaling at least ten years, is eligible for benefits regardless of his absence from the United States. 42 U.S.C. § 402(t)(4)(A–B); *see also* 20 C.F.R.

§ 404.460(b)(2)(I). These two exceptions to the nonpayment provision do not apply, however, if the beneficiary is a citizen of a foreign country that has a social insurance or pension program of general application, 42 U.S.C. § 402(t)(2), or if the beneficiary resides in a foreign country to which the mailing of U.S. government benefits is prohibited, 42 U.S.C. § 402(t)(10).

An individual who is certified as disabled by the SSA, pursuant to 42 U.S.C. § 421, must file an application to receive benefits. 20 C.F.R. § 404.603. As part of the application, the claimant must provide the SSA with evidence of eligibility. *Id.* at § 404.704. By definition, evidence is "any record, document, or signed statement that helps to show whether [the claimant is] eligible for benefits." *Id.* at § 404.702. With regard to proof of a claimant's earnings, however, the only conclusive evidence is an official statement of earnings provided by the SSA, 20 C.F.R. § 404.803, which maintains an earnings record for each person whose employment is covered under the social security program. 42 U.S.C. § 405(c)(2)(A). (If there is an error in the earnings record, it may be corrected pursuant to 20 C.F.R. § 404.822.) A claimant, or his legal representative, can obtain, on request, a copy of the claimant's official SSA earnings statement from the agency free of charge. *See* 42 U.S.C. §§ 405(c)(2)(a), 1320b–13(a)(3)(A–C); 20 C.F.R. §§ 404.810(a), 422.125(b).

## II.

Narayanan Krishnan appeals on behalf of his brother and next friend, Narayanan Deviprasad,[1] the district court's affirmance of SSA's denial of disability benefits to the claimant on the basis of his failure to meet an exception to the general rule that alien beneficiaries cannot receive benefits if they have resided outside the United States for six consecutive

[1] Throughout the administrative and judicial proceedings, Deviprasad and Krishnan Narayanan have been referred to as Narayanan Deviprasad and Narayanan Krishnan, respectively, inverting their given first names and surname. In this opinion we will refer to them as claimant and brother, respectively.

calendar months. 42 U.S.C. §§ 402(t)(1)(A); 402(t)(4)(A–B). The brother also appeals the denial of his motion to vacate its earlier remand allowing SSA to supplement the administrative record on which it based its eligibility decision. Through appointed counsel,[2] the brother urges the court not only to reverse the judgment of the district court, but also to provide equitable relief in the form of disability benefits to the claimant. We hold that the district court erred in remanding the case to SSA, and that SSA violated its regulations. These errors, however, are insufficient to overcome the fact that the original administrative record demonstrates the claimant's ineligibility for benefits; hence, the cases on which his brother relies for equitable relief are inapposite.

## A.

The claimant is a citizen of India who came to the United States on August 26, 1981 to pursue a masters degree at Worcester Polytechnic Institute ("Polytechnic"). From September 1981 through May 1983, when he graduated, the claimant worked as a teaching assistant at Polytechnic. Following graduation, he worked in the United States as a computer software engineer. In May 1986, the claimant was diagnosed with paranoid schizophrenia. Over the next five years, he traveled to India periodically for psychiatric treatment and evaluation, but he suffered relapses each time he returned to the United States. Since April 25, 1991, the claimant has been living in India continuously, where he remains in the care of his brother.

The claimant filed an application for social security disability insurance benefits on May 22, 1993, on the basis of disability stemming from schizophrenia. SSA's psychiatrist agreed that the claimant suffers from paranoid schizophrenia, and determined that his disability began April 2, 1991. By a memorandum of February 7, 1994, SSA advised the American Consulate in Bombay of its disability determination, and requested that the claimant's physician in India and his

---

[2] The court expresses its appreciation for the able assistance provided by counsel appointed by this court.

brother complete the forms necessary to process the benefits claim. The American Consulate responded on April 14, 1994, by submitting paperwork to the SSA that showed that the claimant's condition is permanent and deteriorating; that he is a resident of India; and that he had been living outside the United States since April 25, 1991, had no plans to return to the United States, and had authorized his brother to serve as his payee.

On October 11, 1994, the SSA informed the claimant that his disability claim had been awarded, effective February 1992, but that payments to him had been suspended, pursuant to 42 U.S.C. § 402(t)(4), because he had been residing outside the United States for more than six months. The claimant requested reconsideration of the SSA's decision, asserting that he had earned forty-two QCs. To support his claim, the claimant attached to his request a handwritten chart with his place of work and earnings by year. In a series of administrative appeals, SSA rejected the claim, failing on three separate occasions to respond directly to the claimant's assertion of forty-two QCs. First, by letter dated February 21, 1995, the Director of SSA's Office of Disability and International Operations denied reconsideration because the claimant had not satisfied any of the exceptions to the general rule that benefit payments are not made to aliens who have lived outside the United States for more than six months. Second, an Administrative Law Judge ("ALJ"), on September 5, 1996, denied an appeal on the grounds that the claimant had not lived in the United States for the last six months and did not qualify under any exceptions to the residency requirement. Third, in February 1998, the Appeals Council denied a request for review on the same grounds, rendering the ALJ's decision the final decision of SSA. In the latter two appeals, the claimant had requested counsel, but none appeared on his behalf.

The brother of the claimant filed suit on August 28, 1998. The district court appointed counsel for the brother, and the parties filed cross-motions for summary judgment. The brother argued that because the claimant had more than forty QCs, he qualified under an exception to the general bar

against paying benefits to alien beneficiaries. SSA countered that the claimant had not accrued forty QCs, and submitted, as evidence, computerized extracts of his work history that had not been included in the administrative record, purporting to show that the claimant had accrued only thirty QCs. At a hearing, the brother argued that he was entitled to a judgment on the then-existing administrative record, while SSA argued that the case should be remanded for "good cause" so that it could supplement the record with the certified extracts of the claimant's work history. The brother responded that there was no good cause for SSA's failure to include the earnings history in the original administrative record. On September 17, 1999, over the brother's objection, the district court ruled that "the new evidence counsels in favor of additional agency proceedings," and because there was "good cause shown," remanded the case "*pursuant to sentence six* of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g)." *Krishnan v. Apfel*, No. 98–CV–2059 at 2 (D.D.C. Sept. 17, 1999) (emphasis added).

On remand, an ALJ held a hearing on March 27, 2000, at which the brother, who was represented by counsel, submitted documents, including pay stubs from the claimant's work at Polytechnic, purporting to show that the claimant had earned forty-two QCs. SSA submitted the computerized employment extracts it had first brought to the district court, and argued that because social security taxes were not withheld from money paid to the claimant for his work at Polytechnic, he had earned less than forty QCs. By decision of April 18, 2000, the ALJ agreed with SSA, finding that the claimant had earned less than forty QCs because "[o]n campus work which is done by [foreign] students is excluded from employment (20 C.F.R. 404.1036(a))."

The district court affirmed SSA's remand decision. *Krishnan v. Massanari*, 158 F. Supp. 2d 67 (D.D.C. 2001). Rejecting the brother's position that he was entitled to judgment based on the original administrative record, the court noted that the administrative record had not included a printout of the claimant's earnings record – "a standard exhibit in the administrative record of nearly every disability case." *Id.* at

71. Upon reviewing the supplemented administrative record on remand, the court found that "substantial evidence" supported the ALJ's decision that the claimant had not accrued forty QCs. Accordingly, the district court denied the brother's motion for summary judgment and motion to vacate the earlier remand.

## B.

On appeal, the brother renews his contention that the claimant qualified for benefits under an exception to the non-payment provision for alien beneficiaries because the claimant had earned more than forty QCs, and contends that the district court's remand under sentence six was unlawful and that he is entitled to benefits based on the original administrative record.

Section 405(g), which governs judicial review of final SSA decisions, authorizes only two types of remands: those pursuant to sentence four and those pursuant to sentence six. *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991). Under sentence four, a district court may remand for further proceedings in conjunction with "a judgment affirming, modifying, or reversing the decision of the Commissioner." 42 U.S.C. § 405(g). A sentence-six remand is "entirely different." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). The district court "does not affirm, modify, or reverse the [Commissioner's] decision; it does not rule in any way as to the correctness of the administrative determination." *Melkonyan*, 501 U.S. at 98. Rather, the district court remands either because (1) the Commissioner requested a remand before filing his answer, or (2) there is "new evidence which is material and [ ] there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993). The "principal feature" that distinguishes the two types of remands is that in a sentence-four remand, the district court disposes of the action by a final judgment and relinquishes jurisdiction, whereas in a sentence-six remand, the district court retains jurisdiction over the action pending

further development by the agency. *Id.* at 297, 299. A sentence-four remand is therefore appealable, *Finkelstein*, 496 U.S. at 624–25, while a sentence-six remand is considered interlocutory and thus non-appealable. Accordingly, in a sentence-six remand, there is no final judgment until SSA returns to the district court to file SSA's "additional or modified findings of fact and decision," 42 U.S.C. § 405(g), and the district court enters a judgment. *Melkonyan*, 501 U.S. at 98.

The brother and SSA are in agreement on appeal that the district court erred when it remanded his case under sentence six of 42 U.S.C. § 405(g) without finding the statutory prerequisites. On de novo review, *Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Cuddy v. Carmen*, 762 F.2d 119, 123 (D.C. Cir. 1985), we agree. Neither of the conditions for a sentence-six remand were met. SSA did not file a motion to remand before answering the complaint, and neither the district court nor the parties pointed to any "new" evidence omitted from the administrative record for "good cause" shown. Evidence is "new" only if it was not "in existence or available . . . at [the] time of the administrative proceeding." *Finkelstein*, 496 U.S. at 626; *see also Melkonyan*, 501 U.S. at 98. Here, the evidence to be added on remand – SSA's computerized extracts of the claimant's earnings and any pay stubs or other information in the claimant's possession – had been available from the beginning of the administrative proceedings. The district court's remand under sentence six was therefore erroneous.

Nor can we sanitize the district court's error, as SSA contends, by holding that the district court *could have* entered a sentence-four remand. The district court made no substantive ruling on the correctness of SSA's decision, which is a necessary prerequisite to a sentence-four remand, *Melkonyan*, 501 U.S. at 98–101. Neither did the court relinquish its jurisdiction over the litigation. Its order stated that the court "maintains jurisdiction over this action pending completion of the additional agency proceedings," and directed the parties to appear for a status conference by a date certain. To conclude that despite the plain language of the court's

order, the remand nevertheless could have been entered pursuant to sentence four, not only threatens to render the statutory language of that sentence meaningless, but also threatens to create a judicial quagmire – for a sentence-four remand might have left the district court without jurisdiction to enter the judgment now on appeal.

SSA's reliance on *Richmond v. Chater*, 94 F.3d 263 (7th Cir. 1996), to overcome the jurisdictional implications of a sentence-four remand, is misplaced; the only issue in *Richmond* was whether the appellate court had jurisdiction to reach the merits of the appeal, *id.* at 265, and the court was not presented with a remand under either sentence four or sentence six. In *Richmond*, the district court had remanded a benefits claim case to SSA without indicating whether the remand was issued under sentence four or six, and without entering a final judgment "affirming, modifying, or reversing the decision of the Commissioner," 42 U.S.C. § 405(g). *Id.* The district court later modified the remand order to a final order to allow the claimant's counsel to apply for attorney fees. *Id*. at 266. Still later, the district court vacated the final order so that it could retain jurisdiction over the case after remand. *Id*. The Seventh Circuit stated that the district court could not issue a final judgment and retain jurisdiction, and that if the district court had relinquished jurisdiction, the appellate court did not have jurisdiction over the appeal. *Id*. at 267. The Seventh Circuit concluded that the district court had intended to retain jurisdiction over the case and, even though erroneous, that intended jurisdiction was a sufficient basis for appellate review. *Id*. at 269–70. Unlike the instant case, the Seventh Circuit did not need to consider whether to construe a sentence-six remand under sentence four (or vice versa); rather, it had to untangle the circuitous district court orders to determine whether it had jurisdiction. Like the instant case, however, SSA accepted an ambiguous remand, and the court in *Richmond* chastised SSA for doing so and not challenging the inappropriate jurisdictional decisions of the district court. *Id*. at 269. Accepting SSA's suggestion that this court deem the remand at issue to be a remand under sentence four would create the kind of

convoluted outcome that was criticized by the court in *Richmond.*

In light of the Supreme Court's instruction that there are "sharp distinction[s]" between sentence-four and sentence-six remands, *Shalala,* 509 U.S. at 301, and that the two types of remands are not interchangeable, we decline to interpret the district court's remand to be a remand under sentence four. *Shalala,* 509 U.S. at 301; *Melkonyan,* 501 U.S. at 98; *Finkelstein,* 496 U.S. at 626; *Seavey,* 276 F.3d at 12 (1st Cir. 2001); *Buckner v. Apfel,* 213 F.3d 1006, 1010 (8th Cir. 2000); *Istre v. Apfel,* 208 F.3d 517, 519–20 (5th Cir. 2000); *Raitport v. Callahan,* 183 F.3d 101, 104–05 (2d Cir. 1999); *Nguyen v. Shalala,* 43 F.3d 1400, 1403 (10th Cir. 1994); *Pettyjohn v. Shalala,* 23 F.3d 1572, 1574 (10th Cir. 1994). The Supreme Court has rejected, in light of clear evidence of legislative intent, the notion that Congress intended the district court to retain inherent power to remand SSA claims determinations for new evidence, *Melkonyan,* 501 U.S. at 101. In *Finkelstein,* the Court held that § 405(g) did not expand "the district court's equitable powers" but instead restricted them, 496 U.S. at 629. Hence, the failure of a district court to properly remand under sentence four or six of § 405(g) cannot be cured by reference to a larger authority to remand. *Shalala,* 509 U.S. at 296; *Melkonyan,* 501 U.S. at 101; *Istre,* 208 F.3d at 520–21; *Raitport,* 183 F.3d at 105.

Accordingly, we hold that the district court erred in remanding the case to SSA pursuant to sentence six and that there is no alternative ground on which to conclude that the district court's remand was proper.

## C.

The question remains what consequences should follow. Although the parties appear to agree on appeal that SSA erred by failing to ensure from the beginning that there was a complete administrative record containing the claimant's computerized earnings record, and that SSA also erred by failing to provide any significant explanation for its denial of benefits prior to the remand, SSA maintains that the brother

is entitled to no relief because there is no evidence that he could refute SSA's reasons for denying the claimant's claim. The brother contends first, that because the district court's decision to deny benefits was based on information gathered during an unlawful remand, this court should reverse the district court and compel SSA to provide benefits because, in his view, the evidence in the original administrative record demonstrates the claimant's entitlement to benefits. Alternatively, he contends second, that because the SSA's failure to follow its regulations prejudiced the claimant, the court should provide equitable relief.

To conclude that the brother is entitled to relief under his first contention, the court must be able to find that there was substantial evidence in the original administrative record that the claimant qualified for an exception to the non-payment provision. *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). Because it is undisputed that, when the claimant applied for benefits, he had lived in the United States for less than ten years and was therefore ineligible for the ten-year residency exception to the non-payment provision, the issue is whether the record contained sufficient proof that he had earned forty QCs. *See* 42 U.S.C. §§ 402(t)(1)(A); 402(t)(4)(A–B).

The brother relies solely on the handwritten chart submitted to SSA by the claimant for the proposition that SSA had uncontested evidence that the claimant had earned more than the forty QCs necessary to bypass the non-payment provision. *Id.* at § 402(t)(4)(A). On its face, however, the chart includes less than forty QCs of "covered" employment. The handwritten chart lists, for periods from September 1981 through April 1991, the claimant's place of work, approximate earnings, and the number of "social security credits" he earned. Assuming that the claimant used the phrase "social security credits" to mean QCs, as the parties presume, the chart purports to show that he earned forty-two QCs. *Id.* The chart states that the claimant worked at Polytechnic from

September 1981 through May 1983, the same period during which he was a student at Polytechnic. Under 20 C.F.R. § 404.1028, the earnings of students who work as employees of the school they are attending are not "covered" under social security. Similarly, under 20 C.F.R. § 404.1036, on-campus work performed by foreign students attending school in the United States is not "covered" under social security. The record, including the claimant's letter of November 8, 1994, to SSA stating that he had been admitted to Polytechnic and awarded an assistantship in June 1981, which he accepted, is clear that the claimant was a student while working at Polytechnic.

Once the period of time the claimant worked at Polytechnic is removed from consideration, the remaining periods of employment noted on the chart are from September 1983 through April 1991. A person can earn, at most, four QCs per calendar year. 20 C.F.R. § 404.143(a). It follows that from September 1983 through April 1991 the claimant could not have earned more than thirty-six QCs. Thus, even without the SSA's certified earnings record, which showed that no FICA had been withheld from 1981 to 1983 and became part of the administrative record only upon the unlawful remand, there is substantial evidence to show that the claimant had not earned the forty QCs required to qualify for benefits. To that extent, the district court's reliance on the remanded information was harmless because the original administrative record demonstrated that the claimant was ineligible for benefits.

As to the brother's second contention, he seeks an equitable award of benefits based on SSA errors throughout the administrative process that prejudiced the claimant. Specifically, the brother points to SSA's failure during three separate administrative appeals to advise the claimant that his chart was insufficient evidence of his earnings; counsel him on how to obtain a statement of his earnings from SSA; request additional information from him; produce evidence that showed he was ineligible for benefits; or state that the denial of his claim was based on the determination that he had not accrued forty QCs. The SSA concedes its errors, but con-

tends that they were harmless because the brother has never disputed that the claimant was a student at Polytechnic when he worked there and on remand did not present evidence to prove that the claimant had earned forty QCs.

SSA's regulations provide that the only conclusive evidence of a claimant's earnings is a statement of earnings provided by SSA. 20 C.F.R. § 404.803. SSA regulations, however, also provide that SSA may consider, as evidence, "any record, document, or signed statement that helps to show whether [the claimant is] eligible for benefits." *Id.* at § 404.702. Although the claimant is responsible for providing evidence of eligibility, SSA regulations state that it will "advise [the claimant] what [evidence] is needed and how to get it and . . . consider any evidence [the claimant provides]." *Id.* at § 404.704. If the evidence the claimant provides "is not convincing by itself," SSA is required to "ask [the claimant] for additional evidence." *Id.* at § 404.709.

The claimant submitted a handwritten chart of his earnings to demonstrate that he had accrued more than forty QCs. Although insufficient evidence of his earnings, *see id.* at § 404.803, the chart nevertheless qualified as reviewable evidence under the broad definition of "evidence" in § 404.702. Yet at no point during the three administrative appeals did SSA inform the claimant that the denial of his claim was based on its determination that he had not earned forty QCs; advise him that the chart was insufficient evidence of his earnings, *id.* at § 404.704; counsel him on how to obtain a conclusive statement of earnings from the SSA, *id.;* or ask him for additional information. *Id.* at § 404.709. At most, the administrative record as supplemented on remand indicates that the claimant submitted W–2 forms in response to a SSA letter of May 5, 1993, which itself is not part of the record; another handwritten note by an SSA official that is referenced in SSA's brief is illegible. Nor did SSA submit any contradictory evidence – not even the claimant's official earnings record, which the district court noted is "a standard exhibit in the administrative record of nearly every disability case." *Krishnan*, 158 F. Supp. 2d at 71.

The glaring nature of SSA's regulatory violations is underscored by decisions of the Supreme Court as well as the circuit courts of appeal instructing that in cases involving disability benefits SSA has an affirmative duty to develop a complete administrative record, including "arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000), *Richardson*, 402 U.S. at 400–01; *Poulin v. Bowen*, 817 F.2d 865, 870 (D.C. Cir. 1987); *Narrol v. Heckler*, 727 F.2d 1303, 1306 (D.C. Cir. 1984); *Diabo v. Sec'y Health, Educ. & Welfare*, 627 F.2d 278, 281–82 (D.C. Cir. 1980). This duty is heightened if "the claimant is unrepresented by an attorney," *Poulin*, 817 F.2d at 870; *Narrol*, 727 F.2d at 1306; *Diabo*, 627 F.2d at 282, has limited fluency in English, *Poulin*, 817 F.2d at 870, or suffers from mental illness. *Id.* at 870–71. Thus, in *Poulin*, the court stated that where a claimant was not legally represented before the ALJ, was not a native speaker, and suffered from schizophrenia, the ALJ's "duty of record-development most certainly rises to its zenith." *Id.* at 871. Other circuits have similarly so held. *See, e.g.*, *Seavey v. Barnhart*, 276 F.3d 1, 8 (1st Cir. 2001); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999).

The claimant here is the *Poulin* case *writ large*. Not only was he not represented by legal counsel at any level of SSA review, he is not a native English speaker, lives in a far distant country, lacks the financial resources to return to this country, and suffers from a serious, progressive mental illness. Under the circumstances, SSA's failure to develop a comprehensive administrative record is inexcusable. *Poulin*, 817 F.2d at 870–71; *Narrol*, 727 F.2d at 1306; *Diabo*, 627 F.2d at 282. At the very minimum, SSA was duty bound to include a copy of the claimant's official earnings record, maintained by SSA pursuant to 42 U.S.C. § 405(c)(2)(A), in the administrative record. Concessions of such errors on appeal with promises to do better in the future have a hollow ring, particularly when SSA's failure to state a specific reason for denying benefits could easily have been avoided had SSA's form required the identification of both the express reason for its determination and the specific deficiency in the claimant's application.

We will never know whether, with SSA assistance as required by its regulations and court decisions, the claimant could have provided additional information to cure the deficiencies in his chart or otherwise acted to demonstrate that he qualified for benefits. Had SSA made the type of thorough eligibility inquiry early in the process, consistent with its regulatory duty, this matter could have been resolved promptly. At this point, ten years after he filed his application for benefits, the claimant's mental condition has deteriorated to the point where he cannot assist counsel in pursuing his claim. As the record stands, the brother cannot rest his entitlement to benefits on behalf of the claimant on the illusory grounds that if SSA had fulfilled its responsibilities, the claimant might have presented evidence of other employment or might have chosen to remain in the United States longer so as to qualify for benefits based on ten years of residency rather than forty QCs. The brother did not proffer any additional employment evidence on remand, and even now, assisted by counsel, he has not done so. His family's repeated statements to SSA that for medical reasons the claimant "had no way of surviving" in the United States, that they lacked sufficient financial resources for the brother to travel back to the United States with the claimant, and that the claimant had no plans to return to the United States, dispel the notion that he might have returned to the United States. Thus, the void in the record to support the claimant's prima facie entitlement remains.

Absent a prima facie case of the claimant's eligibility to receive disability benefits, the authorities on which the brother relies to obtain equitable relief are inapposite. For example, in *Allen*, 881 F.2d 37, the Third Circuit chose to award benefits to the claimant rather than remand where SSA's decision was unsupported by substantial evidence on the record. *Id.* at 43–44. The claimant in *Allen* had "established a prima faci[e] case of entitlement, the record was fully developed, and there [was] no good cause for [SSA's] failure to adduce all the relevant evidence in the prior proceeding." *Id.* at 44. Here, the original administrative record betrays the fact that the claimant had not accrued forty QCs or

established ten years of residency. The brother's reliance on *Allen* and its progeny is therefore misguided. *See, e.g.*, *Distasio v. Shalala*, 47 F.3d 348, 350 (9th Cir. 1995); *Nielson v. Sullivan,* 992 F.2d 1118, 1121–22 (10th Cir. 1993); *see also Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985); *Carroll v. Sec'y of HHS*, 705 F.2d 638, 643–44 (2d Cir. 1983). For a court to award benefits where the administrative record, including the evidence proffered by the claimant, indicates that the claimant is ineligible to receive benefits, would extend the theory of equitable relief beyond its breaking point. *Cf. Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Accordingly, in light of a pre-remand administrative record that fails to show that the claimant is entitled to disability benefits and no compelling reason to believe that he or his brother can produce evidence to prove otherwise, we affirm the judgment affirming SSA's denial of benefits, notwithstanding the unlawful remand under sentence six of 42 U.S.C. § 405(g) and SSA's violation of its regulations.