# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 13, 2011        Decided February 7, 2012

No. 11-5076

BRIAN HALL, ET AL.,
APPELLANTS

v.

KATHLEEN SEBELIUS, SECRETARY OF THE UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN SERVICES, AND
MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-01715)

*Kent M. Brown* argued the cause for appellants. With him on the briefs was *Frank M. Northam*.

*Samantha L. Chaifetz*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Tony West*, Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, *Beth S. Brinkmann*, Deputy Assistant Attorney General, and *Mark B. Stern*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG,[1] HENDERSON, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Circuit Judge* GINSBURG joins.

Dissenting opinion filed by *Circuit Judge* HENDERSON.

KAVANAUGH, *Circuit Judge*: This is not your typical lawsuit against the Government. Plaintiffs here have sued because they *don't* want government benefits. They seek to disclaim their legal entitlement to Medicare Part A benefits for hospitalization costs. Plaintiffs want to disclaim their legal entitlement to Medicare Part A benefits because their private insurers limit coverage for patients who are entitled to Medicare Part A benefits. And plaintiffs would prefer to receive coverage from their private insurers rather than from the Government.

Plaintiffs' lawsuit faces an insurmountable problem: Citizens who receive Social Security benefits and are 65 or older are automatically entitled under federal law to Medicare Part A benefits. To be sure, no one has to take the Medicare Part A benefits. But the benefits are available if you want them. There is no statutory avenue for those who are 65 or older and receiving Social Security benefits to disclaim their legal entitlement to Medicare Part A benefits. For that reason, the District Court granted summary judgment for the Government. We understand plaintiffs' frustration with their insurance situation and appreciate their desire for better private insurance coverage. But based on the law, we affirm the judgment of the District Court.

---

[1] As of the date the opinion was published, Judge Ginsburg had taken senior status.

3

I

Most citizens who are 62 or older and file for Social Security benefits are legally entitled to receive Social Security benefits. *See* 42 U.S.C. § 402(a). Since Congress created Medicare in 1965, entitlement to Social Security benefits has led automatically to entitlement to Medicare Part A benefits for those who are 65 or older. *See* 42 U.S.C. § 426(a); *see also* Social Security Amendments of 1965, Pub. L. No. 89-97, § 101, 79 Stat. 286, 290.

Plaintiffs Armey, Hall, and Kraus all receive Social Security benefits and are 65 or older. Therefore, they are automatically entitled to Medicare Part A benefits. But they want to disclaim their legal entitlement to Medicare Part A benefits.[2] In other words, they want not only to reject the Medicare Part A benefits (which they are already free to do) but also to obtain a legal declaration that the Government *cannot* pay Medicare Part A benefits on their behalf. According to plaintiffs, if they could show their private insurers that they are not legally entitled to Medicare Part A benefits, they would receive additional benefits from their private insurers. Plaintiffs argue that the statute allows them to disclaim their legal entitlement to Medicare Part A benefits and that the agency has violated the statute by preventing them from doing so.[3]

---

[2] The two other named plaintiffs do not now receive Social Security benefits but they wish to be able to do so without becoming entitled to Medicare Part A benefits.

[3] Plaintiffs specifically target the agency's Program Operations Manual System, which does not allow a beneficiary to disclaim the legal entitlement to Medicare Part A benefits.

4

II

We first consider plaintiffs' standing. Plaintiffs claim that their private insurers have curtailed coverage as a result of plaintiffs' entitlement to Medicare Part A benefits. Plaintiff Armey declared that his legal entitlement to Medicare Part A benefits led his Blue Cross plan to reduce coverage without a matching reduction in premium. Plaintiff Hall declared that his Mail Handlers plan stopped acting as his primary payer because of his legal entitlement to Medicare Part A benefits. They claim they would receive enhanced coverage from their private insurers if they were not entitled to Medicare Part A benefits. For purposes of the standing inquiry, we must accept those declarations as true.

We conclude that Armey and Hall have suffered injuries in fact from their reduced private insurance. They have shown causation because their private insurance has been curtailed as a direct result of their legal entitlement to Medicare Part A benefits. And as to redressability, plaintiffs claim that they could obtain additional coverage from their private insurance plans if allowed to disclaim their legal entitlement to Medicare Part A benefits.

Because Armey and Hall have standing, we need not address standing for the other plaintiffs. We therefore proceed to the merits.

III

Because plaintiffs are 65 or older and are entitled to Social Security benefits, they are "entitled to hospital insurance benefits" through Medicare Part A. 42 U.S.C. § 426(a). But plaintiffs do not want to be legally entitled to Medicare Part A benefits.

To be clear, plaintiffs already "may refuse to request Medicare payment" for services they receive and instead "agree to pay for the services out of their own funds or from other insurance." MEDICARE CLAIMS PROCESSING MANUAL, ch. 1, § 50.1.5 (2011). So they can decline Medicare Part A benefits.

But plaintiffs want something more than just the ability to decline Medicare payments. They seek a legal declaration that Medicare Part A benefits *cannot* be paid on their behalf – a declaration, in other words, that they are not legally entitled to Medicare Part A benefits. But the statute simply does not provide any mechanism to achieve that objective. If you are 65 or older and sign up for Social Security, you are automatically entitled to Medicare Part A benefits. You can decline those benefits. But you still remain entitled to them under the statute.

What plaintiffs really seem to want is for the Government and, more importantly, their private insurers to treat plaintiffs' decision not to accept Medicare Part A benefits as meaning plaintiffs are also not legally entitled to Medicare Part A benefits. But the problem is that, under the law, plaintiffs remain legally entitled to the benefits regardless of whether they accept them.

Consider an analogy. A poor citizen might be entitled under federal law to food stamps. The citizen does not have to take the food stamps. But even so, she nonetheless remains legally entitled to them. So it is here.

Plaintiffs offer four arguments for why they must be allowed to disclaim their legal entitlement to Medicare Part A benefits. None is persuasive.

First, plaintiffs say that the plain meaning of the statutory term "entitled" requires that the beneficiary be given a choice to accept or reject Medicare Part A. But plaintiffs' entitlement is to "hospital insurance *benefits*" under Medicare Part A. 42 U.S.C. § 426(a) (emphasis added). As explained above, plaintiffs may refuse Medicare Part A *benefits*. *See* MEDICARE CLAIMS PROCESSING MANUAL, ch. 1, § 50.1.5. So they already have a choice to accept or reject those benefits.

Second, plaintiffs claim that, by statute, Medicare Part A is a voluntary program. That's true in the sense that plaintiffs can always obtain private insurance and decline Medicare Part A benefits. But the fact that the program is voluntary does not mean there must be a statutory avenue for plaintiffs to disclaim their legal entitlement to Medicare Part A benefits.

Third, plaintiffs acknowledge that they can escape their entitlement to Medicare Part A benefits by disenrolling from Social Security and forgoing Social Security benefits. From that, plaintiffs contend that entitlement to Medicare Part A benefits has thereby been made a prerequisite to receiving Social Security benefits, in contravention of the statute governing entitlement to Social Security benefits. But plaintiffs have it backwards. Signing up for Social Security is a prerequisite to Medicare Part A benefits, not the other way around.

Fourth, plaintiffs note that entitlement to Social Security benefits is optional and argue that entitlement to Medicare Part A should likewise be optional. But Social Security participation is optional because filing an application for benefits is a statutory prerequisite to entitlement. *See* 42 U.S.C. § 402(a)(3). Congress could have made entitlement to Medicare Part A benefits depend on an application. But Congress instead opted to make entitlement to Medicare Part

A benefits automatic for those who receive Social Security benefits and are 65 or older.

In sum, plaintiffs' position is inconsistent with the statutory text. Because plaintiffs are entitled to Social Security benefits and are 65 or older, they are automatically entitled to Medicare Part A benefits. The statute offers no path to disclaim their legal entitlement to Medicare Part A benefits. Therefore, the agency was not required to offer plaintiffs a mechanism for disclaiming their legal entitlement, and its refusal to do so was lawful.[4]

\* \* \*

We affirm the judgment of the District Court.

*So ordered.*

---

[4] We have considered plaintiffs' other arguments and find them without merit.

KAREN LeCRAFT HENDERSON, *Circuit Judge*, dissenting:

In *Silver Blaze*, a prized race horse disappears from its stable on the eve of a high-stakes race. By the time Inspector Gregory arrives from Scotland Yard, Sherlock Holmes is on the case.

> Gregory: "Is there any point to which you would wish to draw my attention?"
>
> Holmes: "To the curious incident of the dog in the night-time."
>
> Gregory: "The dog did nothing in the night-time."
>
> Holmes: "That was the curious incident."

SIR ARTHUR CONAN DOYLE, MEMOIRS OF SHERLOCK HOLMES 22 (A. L. Burt Co. 1922) (1894). What led Holmes to conclude that the dog knew the thief was its silence. The dog did not bark. Ditto here. The majority's silence on the sole question in this case—is the Social Security Administration (SSA) authorized to penalize an individual who seeks to decline Medicare, Part A coverage by requiring him to forfeit his Social Security benefits and repay any benefits previously received—provides the answer: no. Because I believe that SSA's Program Operations Manual System (POMS) gives the SSA power that the Congress in no way provides, I respectfully dissent.[1]

---

[1] Although the plaintiffs assert that the POMS was produced by Health and Human Services (HHS) Secretary Sebelius and SSA Commissioner Astrue jointly, *see, e.g.*, Am. and Substituted Compl. ¶18, the POMS is an internal *SSA* document used by *Social Security* employees in assessing *Social Security* claims, Appellees' Br. at 8; Program Operations Manual System Home, https://secure.ssa.gov/apps10/ (last visited January 23, 2012). Accordingly, this dissent addresses only Commissioner Astrue's authority *vel non* to devise the challenged POMS provisions.

**I.**

The Medicare Act, 42 U.S.C. §§ 1395 *et seq.*, establishes a program of health insurance for the elderly and disabled. Medicare Part A, often called "Hospital Insurance" or "HI," covers services furnished by hospitals and other institutional providers. An individual is statutorily entitled to Medicare, Part A upon becoming entitled to monthly Social Security retirement benefits (SSRB).[2] Under the Medicare Act:

> Every individual who:
>
> > (1) has attained age 65, and
> >
> > (2)(A) is entitled to monthly insurance benefits under [42 U.S.C. § 402(a)], . . .
>
> > shall be entitled to hospital insurance benefits under part A . . . for each month for which he meets the condition specified in paragraph (2) . . . .

42 U.S.C. § 426(a). Thus, anyone who "is entitled" to SSRB "shall be entitled" to Medicare, Part A benefits immediately upon his 65th birthday. *Id.* Under the Social Security Act:

> Every individual who
>
> > (1) is a fully insured individual (as defined in [42 U.S.C. § 414(a)]),

---

[2]  Certain individuals are not statutorily entitled to Part A benefits because they do not qualify for SSRB. Specifically, under 42 U.S.C. § 1395i-2(a), an individual who (1) "has attained the age of 65;" (2) "is enrolled in [Medicare, Part B];" (3) "is either (A) a citizen or (B) an alien lawfully admitted for permanent residence;" and (4) "is not otherwise entitled [to Medicare, Part A] . . . shall be eligible to enroll in [Medicare, Part A]." To secure Medicare, Part A benefits, he must apply and periodically pay premiums—much like private insurance.

> (2) has attained age 62, and
>
> (3) has filed application for old-age insurance benefits . . .
>
> shall be entitled to . . . old-age insurance benefit[s] . . . .

42 U.S.C. § 402(a). To be "entitled" to SSRB, then, an individual must first apply therefor; if he fails to file an application, he is not "entitled" to the benefits regardless of his age or working history.

The POMS is a massive internal set of provisions, produced without notice and comment rulemaking and used by SSA employees to process claims for SSRB. *See Wash. Dep't. of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 US. 371, 385 (2003) (POMS provides "the publicly available operating instructions for processing Social Security claims"); *Power v. Barnhart*, 292 F.3d 781, 786 (D.C. Cir. 2002) (POMS is an "interpretive document" "lack[ing] . . . administrative formality"). The provisions of the POMS relating to HI alone include more than 100 printed pages. *See* SSA's Program Operations Manual System, https://secure.ssa.gov/apps10/poms.nsf/chapterlist!openview &restricttocategory=06 (last visited Jan. 23, 2012).[3] The plaintiffs[4] limit their statutory, procedural and constitutional challenges to three provisions of the POMS, arguing that they

---

[3]    The POMS fits nicely the description the United States Supreme Court once used for the Medicaid statute: " 'an aggravated assault on the English language, resistant to attempts to understand it.' " *Schweiker v. Gray Panthers*, 453 U.S. 34, 43 n.14 (1981) (quoting *Friedman v. Berger*, 409 F. Supp. 1225, 1226 (S.D.N.Y. 1976)).

[4]    I agree with my colleagues that plaintiffs Hall and Armey have the requisite standing to pursue this suit. Majority Op. at 4.

impermissibly tether Medicare, Part A entitlement to SSRB by penalizing them if they decline Medicare, Part A coverage.

The first of the three challenged provisions, POMS HI 00801.002, reveals the ad hoc manner in which the entire POMS was assembled. The "Introduction" to the provision provides in full: "Some individuals entitled to monthly benefits have asked to waive their HI entitlement because of religious or philosophical reasons or because they prefer other health insurance." POMS HI 00801.002. Then, without so much as a word of explanation as to the statutory basis or rationale behind it, the provision announces SSA's answer, dubbing it "Policy."

> Individuals entitled to monthly benefits which confer eligibility for HI may *not* waive HI entitlement. The only way to avoid HI entitlement is through withdrawal of the monthly benefit application. Withdrawal requires repayment of all [SSRB] and HI benefit payments made.[5]

POMS HI 00801.002 (emphasis in original). The other two provisions are equally opaque as to their rationale and silent on their authority. POMS HI 00801.034 provides:

> To withdraw from the HI program, an individual must submit a written request for withdrawal and must refund any HI benefits paid on his/her behalf as explained in GN 00206.095 B.1.c.

---

[5] On its face, POMS HI 00801.002 requires a person who does not want Medicare, Part A coverage to refund both SSRB and HI benefits. Plaintiffs Hall and Armey limit their challenge to the required forfeiture and repayment of their SSRB only.

An individual who filed an application for both monthly benefits and HI may:

- withdraw the claim for monthly benefits without jeopardizing HI entitlement; *or*

- withdraw the claim for both monthly benefits and HI.

The individual may *not* elect to withdraw only the HI claim.[6]

(emphases in original). The third, POMS GN 00206.020, repeats the bare command that "a claimant who is entitled to monthly [SSRB] cannot withdraw HI coverage only since entitlement to HI is based on entitlement to monthly [SSRB]." In short, with no explanation (other than the above clause beginning "since") much less a statutory basis, all three challenged provisions empower SSA personnel to force an individual who does not want Medicare, Part A coverage to forfeit future SSRB and refund SSRB payments already received.

## II.

"Not every agency interpretation of a statute is appropriately analyzed under *Chevron* [*U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)]." *Ala. Educ. Ass'n v. Chao*, 455 F.3d 386, 392 (D.C. Cir. 2006). Indeed, *Chevron* deference is appropriate only if the Congress has delegated authority to an agency to make rules having the

---

[6]    Interestingly, this provision—contrary to the position of Commissioner Astrue who asserts that anyone entitled to SSRB "need not apply for" Medicare, Part A coverage, Appellees' Br. at 17—declares that an individual can "file[] an application for both [SSRB] and HI," POMS HI 00801.034.

6

"force of law" and the agency rule at issue was "promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). Although SSA Commissioner Astrue is authorized to issue rules with the "force of law," *see* 42 U.S.C. § 405(a), the POMS was not produced in the exercise of that authority. As we made plain in *Power v. Barnhart*, "[the POMS] lack the administrative formality or other attributes that would justify substantial judicial deference under *Chevron* . . . and hence . . . they would *at best* qualify for the more limited form of deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, [139-140] (1944)." 292 F.3d at 786 (emphasis added). But neither *Skidmore*, *Chevron* nor *Mead* requires any deference to an *ultra vires* "interpretive document." *See, e.g.*, *Ry. Labor Execs. Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 671 (D.C. Cir. 1994) ("[D]eference is warranted only when Congress has . . . 'delegat[ed] . . . authority to the agency.' " (quoting *Chevron*, 467 at 843-44)); *Natural Res. Def. Council v. Reilly*, 983 F.2d 259, 266 (D.C. Cir. 1993) ("[I]t is only legislative intent to delegate . . . authority that entitles an agency to advance its own statutory construction" (internal quotation marks and citations omitted; brackets in original)); *see also D.C. Hosp. Ass'n. v. District of Columbia*, 224 F.3d 776, 780 (D.C. Cir. 2000) ("Because the provision at issue here is unambiguous, we owe no deference to a contrary construction even if formally adopted by the Secretary of [HHS].").

Here, the scope of the relevant provisions of the Medicare and Social Security Acts is as plain as the definition of "entitled." Under 42 U.S.C. § 426(a), a person who is "entitled" to SSRB and has reached age 65 "shall be entitled" to Medicare, Part A benefits. "Entitled" is synonymous with "eligible," which means "*capable* of being *chosen*" or "legally qualified." BLACK'S LAW DICTIONARY 521 (6th ed. 2002) (emphases added). To "entitle" means "to give a right or legal title to; qualify (one) for something; furnish with

proper grounds for seeking or claiming something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 758 (1993). As explained by the Supreme Court,

> Both in legal and general usage, the normal meaning of entitlement is a right or benefit for which a person qualifies . . . . It means only that the person satisfies the prerequisites attached to the right.

*Ingalls Shipbuilding v. Dir.*, 519 U.S. 248, 256 (1997) (internal quotation marks and citation omitted). This definition has been applied by our Circuit and others in interpreting the terms "entitlement" and "entitled" as they are used in other parts of the Social Security and Medicare Acts. *See Krishnan v. Barnhart*, 328 F.3d 685, 688 (D.C. Cir. 2003) (to be "entitled" means that an individual "qualifies" or has met the requisite requirements to obtain the benefits); *Jewish Hospital, Inc. v. Sec'y of HHS*, 19 F.3d 270, 275 (6th Cir. 1994) (as used in the Medicare Act, "[t]o be entitled . . . means [to] possess[] the right or title to that benefit" (emphasis removed)); *Fagner v. Heckler*, 779 F.2d 541, 543 (9th Cir. 1985) (as used in Social Security Act, "entitled means to give right or legal title to, qualify (one) for something; furnish with proper grounds for seeking or claiming something" (internal quotation marks and citation omitted)).

Although the district court noted that the "plain-English reading of the word 'entitled' has its attraction[]," the court nonetheless held that "in context [of] Medicare 'entitled' does not actually mean 'capable of being rejected.' " *Hall v. Sebelius*, 770 F. Supp. 2d 61, 67 (D.D.C. 2011). If the Congress had wanted to make enrollment in Part A optional, the court stated, it would have said so expressly. *Id.* at 67-68. In 42 U.S.C. § 1395i-2, for example, the Congress provided that every individual who (1) "has attained the age of 65;" (2)

"is enrolled in [Medicare, Part B];"[7] (3) "is either (A) a citizen or (B) an alien lawfully admitted for permanent residence"; and (4) "is not otherwise entitled [to Medicare, Part A] . . . *shall be eligible to enroll in* [Medicare, Part A]." 42 U.S.C. § 1395i-2(a) (emphasis added). In the court's view, if the Congress had wanted Medicare, Part A coverage to be optional under 42 U.S.C. § 426(a), the statute would have provided that any person entitled to receive SSRB who reaches the age of 65 "shall be eligible to enroll in [Medicare, Part A]." *Hall*, 770 F. Supp. at 68.[8]

My colleagues reach a similar conclusion. Citing a single provision of Secretary Sebelius's Medicare Claims Processing Manual, they conclude:

> Congress could have made entitlement to Medicare Part A benefits depend on an application. But Congress instead opted to make entitlement to Medicare Part A benefits automatic for those who receive Social Security Benefits and are 65 or older.

---

[7]    Medicare, Part B provides coverage for the costs of physicians' services and other medical services. Unlike Medicare, Part A, which is financed by a mandatory payroll tax, Medicare, Part B is financed in large part by enrollees' premiums.

[8]    Comparing 42 U.S.C. § 426(a) and 42 U.S.C. § 1395i-2, as the district court did, is not that persuasive. Under the first provision, an individual's eligibility for Medicare, Part A coverage occurs by operation of law if he is at least 65 years old and receives SSRB. The second provision, however, requires him to apply for the coverage. The two provisions address different circumstances (in one, the benefit is by operation of law and in the other, by application) and so are not *in pari materia.*

Majority Op. 6-7.[9] According to the majority, because the statute offers "no path to disclaim their legal entitlement to Medicare Part A benefits," the "agency was not *required* to offer plaintiffs a mechanism for disclaiming their legal entitlement." Majority Op. 7 (emphasis added). But that is not to say that, having *chosen* to allow disclaimer via the POMS, the POMS can take away a *statutory* entitlement (i.e., SSRB) as a condition of the disclaimer.

Plaintiffs Hall and Armey do not dispute that entitlement to Medicare, Part A occurs by operation of law. *See* Reply Br. at 2 ("Plaintiffs-Appellants never suggested that they sought to renounce their entitlement to Medicare, Part A, and they did not contend that the Defendant-Appellees must allow them to . . . somehow declare that Plaintiffs-Appellants are not entitled to Medicare, Part A."). Instead, they argue something much more fundamental, i.e., that there is no statutory authority for the POMS's edict that an individual who declines Medicare, Part A coverage is required to forego/refund SSRB. I agree. The relevant language of both statutes, 42 U.S.C. §§ 402(a) and 426(a), reads identically in that they both provide that an individual "shall be entitled" to benefits if he meets certain qualifying conditions. Neither statute requires an "entitled" individual to accept the benefits.

---

[9] The majority opinion cites an equally ad hoc manual put together not by SSA Commissioner Astrue but by codefendant Sebelius, which states that a Medicare beneficiary "may refuse to request Medicare payment" for services he receives and instead "agree to pay for the services out of [his] own funds or from other insurance." Majority Op. at 5 (citing Medicare Claims Processing Manual, ch. 1, § 50.1.5 (2011)). But even a cursory examination of the Medicare, Part A maze reveals this option to be illusory. Under 42 U.S.C. § 1395cc(a)(1)(A)(i), a hospital cannot charge or accept private payment "for items or services for which [an] individual is entitled to have payment made under [Medicare, Part A]."

Nor do they even hint at permitting the SSA to withdraw SSRB and demand repayment thereof if an individual does not want to participate in Medicare, Part A. The POMS alone does that. It gives SSA Commissioner Astrue a power not provided him by the Congress—the power to penalize a person who is "entitled" to Medicare, Part A by operation of law but who does not want Part A coverage by stripping that person of future SSRB and forcing repayment of SSRB already received.[10]

In *American Bar Association v. FTC*, we made plain that an agency cannot exercise regulatory power without congressional grant. 430 F.3d 457, 468 (D.C. Cir 2005). As we explained, "if we were 'to *presume* a delegation of power' from the absence of 'an express *withholding* of such power [in

---

[10] For this reason, my colleagues' analogy to a "poor citizen" who is "entitled to" but "does not have to take food stamps" is inapposite. *See* Majority Op. at 5. Indeed, much like the rest of its analysis, the majority opinion's analogy misses the issue in this case: whether an agency, without statutory authority, can require a person to forego/refund a *statutory* entitlement simply because he does not want another federal benefit that also accrues by operation of law. If the food stamp beneficiary could decline that benefit only by also giving up Medicaid and repaying all Medicaid benefits received, I wonder if my colleagues would endorse *that* agency overreach. Here's another analogy. A person born in the United States is, by operation of law, entitled to the benefits of citizenship upon his birth. U.S. Const., Amend. XIV, § 1 ("All persons born . . . in the United States . . . are citizens of the United States and the State wherein they reside."); *see, e.g.*, 22 U.S.C. § 212 (a "person[] . . . owing allegiance . . . to the United States"—i.e., a citizen or national—is entitled to a U.S. passport). If he were to eventually renounce his citizenship, *see* 8 U.S.C. § 1481(a)(5), could the United States Department of Education, through an "interpretive document," force him to repay the federal portion of his primary/secondary public education? Of course not.

11

the statute], agencies would enjoy virtually limitless hegemony.' " *Id.* (quoting *Ry. Labor Execs. Ass'n*, 29 F.3d at 671) (emphasis in original); *see also Ry. Labor Execs. Ass'n*, 29 F.3d at 671 (to suggest "deference is implicated any time a statute does not expressly *negate* the existence of a claimed administrative power (i.e., when the statute is not written in "thou shalt not" terms), is both flatly unfaithful to the principles of administrative law . . . and refuted by precedent"). As the Supreme Court has aptly observed, the "[Congress] does not . . . hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). If the Congress had intended to impose the "death penalty" on SSRB for anyone declining Medicare, Part A coverage, it would not have hidden the imposition in the non-germane phrase "shall be entitled." By using the word "entitled," the Congress made plain that the "legal right or title" to Medicare, Part A coverage, while *available* by operation of law, is not unwaivable, much less waivable *only* by sacrificing benefits for which an individual has paid.[11]

Because there is no statutory basis for the challenged provisions of the POMS, they are *ultra vires*. "The legislative power of the United States is vested in the Congress, and the exercise of quasi-legislative authority by governmental departments and agencies must be rooted in a grant of such power by the Congress and subject to limitations which that body imposes." *See Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979). The authority to administer the law is not the power to make the law. *Orion Reserves Ltd. P'ship v. Salazar*, 553 F.3d 697, 703 (D.C. Cir. 2009). Accordingly, "a regulation contrary to a statute is void." *Id.* Commissioner Astrue is clothed with exceptional authority but even he

---

[11]    In response to this well-settled authority, my colleagues—again—do not bark.

cannot make law.[12]

For the foregoing reasons, I respectfully dissent.

---

[12] Because I believe the POMS are plainly *ultra vires*, I do not address the plaintiffs' procedural and constitutional challenges.